**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| GS HOLISTIC, LLC, | ) | |
| | ) | |
| Plaintiff | ) | Civil Case No. 3:23-cv-00325-WHR-MRM |
| v. | ) | |
| | ) | |
| KRAZY DAZE LLC d/b/a KRAZY DAZE | ) | |
| and MELISSA COREY, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION FOR DEFAULT FINAL JUDGMENT AGAINST BOTH DEFENDANTS

Pursuant to Federal Rule 55(b)(2), the Plaintiff, GS HOLISTIC, LLC, moves this Court for entry of default judgment against the Defendants, KRAZY DAZE LLC d/b/a KRAZY DAZE and MELISSA COREY, in this action. The Defendants were served with the summons and Complaint but failed to file an answer or otherwise defend in this lawsuit. The Plaintiff now requests that this Court enter the attached proposed Default Judgment and Order for Other Equitable Relief, and Civil Money Penalties ("Default Judgment"). The Default Judgment award includes Statutory Damages of $144,643.66, and Costs in the amount of $1,303.10 to be imposed against the Defendants.

## I. PRELIMINARY STATEMENT

As a result of Defendants' failure to appear in this action and the subsequent entry of default against them, the material factual allegations set forth in the Plaintiff's Complaint must be accepted as true. Those allegations establish all of the necessary elements of the Plaintiff's claims for (i) willful trademark infringement of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1114; (ii) trademark counterfeiting of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1116(d);

and (iii) willful trademark infringement (false designation) in violation of 15 U.S.C. § 1125(a).

On the facts presented, it is also appropriate for the Court to grant the Plaintiff all relief requested in this motion, namely:

> a. Statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $144,643.66 and
>
> b. Costs in the amount of $1,303.10.

In sum, the Plaintiff seeks an award of statutory damages for Defendants' offer for sale of a counterfeit good and willful conduct, and an award of the Plaintiff's costs.

## II. STATEMENT OF FACT

> a. The "STÜNDENGLASS" Trademarks and Plaintiff's Business.

GS has worked to distinguish the Stündenglass brand as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. Compl. ¶ 9. Folkerts Decl. as to Damages. Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of authentic Stündenglass branded products. *Id.* GS has built a reputation within the industry throughout the United States based on the high quality of its products. Because of this goodwill and reputation, the Stündenglass Trademarks and GS in general have become famous. *See* Folkerts Decl. as to Damages.

As a result of the continuous and extensive use of the Stündenglass trademarks GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademarks. Compl. ¶ 10; *See* Exhibit A. GS has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of glass infusers and accessories. Compl. ¶ 13. Folkerts Decl. as to Damages. The Stündenglass Marks are distinctive to both the consuming public and the Plaintiff's trade. *Id.* GS's Stündenglass

branded products are made from superior materials. Folkerts Decl. as to Damages. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well. Compl. ¶ 14; Folkerts Decl. as to Damages.

The Stündenglass Trademarks are exclusive to GS and appear clearly on GS's Stündenglass products, packaging and advertisements. Compl. ¶ 15; *See* Exhibit A. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks. Compl. ¶ 15. Folkerts Decl. as to Damages. As a result, products bearing GS's Stündenglass Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS. Compl. ¶ 15. Folkerts Decl. as to Damages.

GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. Compl. ¶ 16. *See* Exhibit B. Because of GS's efforts, the Stündenglass brand is famous throughout the United States. Compl. ¶ 16. Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stained-glass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion. Compl. ¶ 17. *See* Exhibit B. In fact, the Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public. Compl. ¶ 17-18. *See* Exhibit B.

At the time of this Complaint, the Plaintiff was the owner of federally registered and common law trademarks. *See* Exhibit A.

b.    The Stündenglass marks are a Counterfeiting Target.

GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Ohio. Folkerts Decl. as to Damages. GS has authorized approximately 3,000 stores in the United States to sell its products. *Id*. As such, Stündenglass branded products reach a vast array of consumers throughout the country.  Compl. ¶ 19. Folkerts Decl. as to Damages.

It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products.  For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600. Compl. ¶ 20. Folkerts Decl. as to Value of Damages ¶¶ 10-14.  *See* Exhibit C.

c.    Defendants' Infringing Conduct and Failure to Litigate.

The Defendants have offered for sale at least one, but likely more, counterfeit Stündenglass infusers and/or related parts. *See* Exhibit C. The counterfeit offered for sale bore the trademarks that are registered to the Plaintiff. *See* Exhibit C.  The Defendants' acts constitute willful trademark infringement because they knew or should have known that the counterfeit offered for sale was not authentic.  This product was sold for only $386.10 when the authentic pieces retail for $600.  The Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by the Defendants because they are the same marks and are not alleged to belong to any other source or origin than the Plaintiff. Compl. ¶ 42-43; *see* [ECF]. *See* Exhibit C. The Defendants have failed to respond to the Complaint or otherwise appear in this action, effectively avoiding discovery of important evidence showing actual sales, wholesaler source information, financial disposition, or state of mind. The Plaintiff is not obligated to expend its own

limited resources by law to chase down Defendants that have by their disregard of the summons and Complaint served on them neglected to defend themselves despite their legal duty to do so – the requisite sanctions for which are default and that the allegations of the Complaint are taken as true. To require such a chase would be an unfairly shifted burden to the Plaintiff in default cases.

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment following entry of default by the Clerk of the Court, against properly served Defendants who fail to file a timely responsive pleading. Fed. R. Civ. P. 55(b); *Heard v. Caruso*, 351 Fed. Appx. 1, 15-16 (6th Cir. 2009); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986) ("entry of default is just the first procedural step … to obtaining a default judgment").

## IV. ARGUMENT

### A.  A Default Judgment Should Be Awarded Against the Defendants.

The Plaintiff has fulfilled its obligations under Fed. R. Civ. P. 55(a) with respect to the entry of default by the Clerk of the Court. The entry of default was proper.  As shown in the record of this matter, the Plaintiff served the Defendants, on January 25, 2024 [DE 14, 14-1].  Because the Defendants did not file a response to the Complaint, the Clerk of this Court correctly entered an Entry of Default as to the Defendants on January 22, 2025 [DE 18]. As such, the procedural requirements for Default Judgment have been met.

### B.  The Plaintiff's Complaint is Sufficient for the Judgment.

The merits of GS's case and the sufficiency of GS's Complaint warrant the entry of default judgment against the Defendants.

Once default is entered against a defendant, that party is deemed to have admitted all well-pleaded allegations in the complaint, except those related to damages. *Boost Worldwide, Inc. v.*

*Cell Station Wireless, Inc.*, No. 2:13-cv-490, 2014 U.S. Dist. LEXIS 1467, at *3-4 (S.D. Ohio Jan. 7, 2014) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995)). Nevertheless, a court deciding whether to grant a motion for a default judgment must still satisfy itself that the facts in the complaint state a claim for relief against the defendant. *Kuhlman v. McDonnell*, No. 1:20-cv-510, 2022 U.S. Dist. LEXIS 23846, at *4 (S.D. Ohio Feb. 10, 2022) The Court must exercise "sound judicial discretion" when determining whether to enter default judgment. *State Farm Bank, F.S.B. v. Sloan,* No. 11-cv-10385, 2011 U.S. Dist. LEXIS 57652, at *4 (E.D. Mich. May 31, 2011).

### 1. Trademark Infringement (15 U.S.C §1114)

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a Plaintiff must prove that a Defendant used, without the consent of the registrant, "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To establish liability for infringement of a federally registered trademark in violation of the Lanham Act, a party must show that: (1) it owns a trademark, (2) the infringer used the mark in commerce without authorization, and (3) the use of the alleged infringing trademark "is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Cardinal Servs., v. Cardinal Staffing Sols.*, Inc., No. 2:19-cv-1743, 2019 U.S. Dist. LEXIS 208873, at *4 (S.D. Ohio Dec. 4, 2019) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013)).

The Plaintiff, GS HOLISTIC, has established each of these elements. First, registered trademarks are entitled to a presumption of ownership and validity. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark . . .").; *See also*. Exhibit A. Federal registration of a trademark is prima facie evidence of the

mark's validity and of the registrant's exclusive ownership of and right to use the mark. 15 U.S.C. § 1057(b). Here, GS is the owner of the Stündenglass Trademarks, which are exclusive to GS. CompI. at ¶ 10; *See* Exhibit A. Stündenglass Marks are registered with the United States Patent and Trademark Office (the "USPTO"). *See Id*. Therefore, GS has satisfied the first element.

The Defendants' use of counterfeit Stündenglass Marks in commerce are obvious. *See* Exhibit C. The Defendants do not have, nor did they have consent to offer products bearing Stündenglass marks. Folkerts Decl. as to Damages. Instead, the Defendants intentionally traded on the goodwill of the Stündenglass' Marks - free riding on its reputation for profit, - causing deception in the marketplace, and diverting potential sales of the Plaintiff's infusers to the Defendants. The Defendants further have sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of Stündenglass Marks. The gravity infuser, which donned the alleged Trademarks, was sold for a profit in the ordinary stream of commerce. *Id*. The Defendants' use of the Stündenglass Marks includes advertising, displaying, selling, and/or offering for sale unauthorized and illegitimate copies of Stündenglass branded products. *See* Exhibit C. Therefore, GS has satisfied the second element.

Courts in the Sixth Circuit has recognized that when the defendant's business involves use of counterfeit imitation marks (like in this matter), likelihood of confusion is presumed and a multi-factored balancing analysis concerning the likelihood of confusion is unnecessary:

> As the Sixth Circuit has noted, in this latter set of cases, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design 'with the intent to derive a benefit from the reputation of another.'" *Lloyd*, 184 F. Supp. 2d 665, 2001 WL 1356137, * 4 (quoting *Exercizio v. Roberts*, 944 F.2d 1235, 1243, 20 U.S.P.Q.2d 1001 (6th Cir. 1991) [**11] (citing *Zin-Plas Corp. v. Plumbing Quality* AGF, Co., 622 F. Supp. 415, 420 (W.D. Mich. 1985))). See also *Dive N' Surf, Inc. v. Anselowitz*, 834 F. Supp. 379, 382 (M.D. Fla. (1993) (where marks are "substantially similar as to both design and use[,]" "the court presumes that defendant's

> counterfeit items caused public confusion in the marketplace"); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (presumption arises when counterfeit symbols are substantially identical to genuine symbols and are used in the same manner as genuine symbols).

*GMC v. Autovation Techs., Inc.*, 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004). The Defendants used counterfeit marks that are identical to the GS's registered Stündenglass Marks. *See* Exhibit C; *See* Exhibit A. As seen in the pictures, the Defendants' marks are copies of GS's registered Stündenglass Marks.

### 2. False Designation of Origin and Unfair Competition (15 U.S.C. §1125(a))

Under 15 U.S.C. § 1125(a) ("Section 1125(a)"), any person who uses in commerce "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in a manner likely to cause confusion, mistake, or deception as to the "affiliation, connection, or association" of that person or "as to the origin, sponsorship, or approval" of that person's goods or services by another person is liable in a civil action. 15 U.S.C. § 1125(a)(1)(A).

Similar to Section 1114, to establish liability for unfair competition under the Lanham Act, a plaintiff must show: "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Topnotch Innovations, LLC v. Dean*, No. 2:20-cv-1384, 2020 U.S. Dist. LEXIS 194772, at *5 (S.D. Ohio July 28, 2020). The Sixth Circuit has held that claims brought under Sections 1114 and 1125(a) have the same elements. *Audi AG v. D'Amato*, 469 F.3d at 542 (under the Lanham Act, the Sixth Circuit "use[s] the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.") (citing *Two Pesos v. Taco Cabana*, 505 U.S.

763, 780, 112 S. Ct. 2753, 120 L. Ed. 2d 615 (1992)).

Accordingly, the Defendants' acts, as described above, constitute false designation of origin and unfair competition. Given the Defendants' default, the Defendants deemed admitted the allegations in the Complaint, and therefore, the Plaintiff has established its claim for false designation of origin and unfair competition.

### C. Plaintiff Should be Awarded Statutory Damages

The Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Moreover, it constitutes false designation of origin which is likely to cause confusion and mistake as it will deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by the Plaintiff. As a result, the elements described by the court have been satisfied and statutory damages should be awarded.

The Lanham Act allows the plaintiff to elect statutory damages instead of actual damages. 15 U.S.C. § 1117(c). The Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ." 15 U.S.C. § 1117(c)(1). Where willfulness is demonstrated, however, a maximum award of $2,000,000 per counterfeit mark per type of good sold, offered for sale, or distributed, may be awarded. 15 U.S.C. § 1117(c)(2).

In 2008, Congress amended the Lanham Act to "enhance civil and criminal penalties for intellectual property violations [and] to make commercial scale IP theft less profitable and easier to prosecute. . ." See H.R. Rep. 110-617, 110th Cong., 2nd Sess. 2008. *Louis Vuitton Malletier v. Eisenhauer Rd. Flea Mkt., Inc*., No. SA-11-CA-124-H, 2011 U.S. Dist. LEXIS 170450, at *5 (W.D. Tex. Dec. 19, 2011). The court in *Playboy Enters., Inc. v. Universal Tel a Talk, Inc*., CIVIL ACTION NO. 96-6961, 1999 U.S. Dist. LEXIS 6124, at *6 (E.D. Pa. Apr. 26, 1999) also

acknowledged that "Congress intended to recognize that counterfeiting, while a subsection of infringement, represents a greater evil than ordinary infringement, and thus allowed an alternative route to damages and a lesser degree of required notice." The court in *Adobe Sys. Inc. v. Chukoula LLC*, No. CV-17-1808-MWF (SKx), 2018 U.S. Dist. LEXIS 251312, at *15 (C.D. Cal. Feb. 27, 2018) recognized that records kept by counterfeiters are frequently nonexistent, inadequate or deceptively kept.[1]

This is why courts frequently decline to limit statutory damages awards if they are within the range provided by Congress, leaving the weighing of circumstantial evidence to a jury as other measures of calculation are not required or provided for in the statute:

> It then held a trial to decide statutory damages. The jury found that Star did not act willfully, and it awarded Republic $123,000 in damages per mark—below the maximum of $200,000 per mark permitted by section 1117(c)(1) for non-willful infringement. The district court denied Star's motion for judgment as a matter of law challenging the size of the verdict. Because the verdict fell within the range of statutory damages permitted by Congress and Star did not object to the jury instructions about awarding those damages, we affirm.

In *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc*., No. 24-10765, 2025 U.S. App. LEXIS 10484, at *2 (11th Cir. Apr. 30, 2025), the court explained how statutory damage awards by the jury should be left to rest[2] citing both the Supreme Court and the Eighth Circuit, precisely

---

[1] *Adobe Sys. Inc. v. Chukoula LLC*, No. CV-17-1808-MWF (SKx), 2018 U.S. Dist. LEXIS 251312, at *15 (C.D. Cal. Feb. 27, 2018).
> Congress appears to have been motivated by a gap in the law: Plaintiffs who were victorious on their civil counterfeiting claims were often unable to obtain an adequate recovery in actual damages because counterfeiters often maintain sparse business records, if any at all." *Louis Vuitton*, 676 F.3d at 110 (citing S. Rep. 104-177, at 10 (1995)) (noting that "counterfeiters records are frequently nonexistent, inadequate or deceptively kept").

[2] *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc*., No. 24-10765, 2025 U.S. App. LEXIS 10484, at *2 (11th Cir. Apr. 30, 2025).
> Star's argument that the verdict needed to be related to actual damages is also wrong

reading the plain language of the statute. *Id.*

A plaintiff who proves a violation of a registered trademark is entitled to recover its profits and any damages sustained. 15 U.S.C. § 1117(a). However, "in a case involving use of a counterfeit mark . . . the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater. . .." 15 U.S.C. § 1117(b). Several courts have found "statutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not

---

as a legal matter. <u>The lodestar for the legality of an award for statutory damages is the range enshrined by Congress—not the amount of actual damages.</u> In the copyright context, for example, a district "court has wide discretion in determining the amount of statutory damages to be awarded, <u>constrained only by the specified maxima and minima."</u> *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (emphasis added) (citation and internal quotation marks omitted). And the Supreme Court has explained that a statutory damages award "must be within the prescribed limitations, that is to say, neither more than the maximum nor less than the minimum" but "[w]ithin [*10] these limitations the court's discretion and sense of justice are controlling." *F. W. Woolworth Co. v. Contemp. Arts, Inc.*, 344 U.S. 228, 232, 73 S. Ct. 222, 97 L. Ed. 276 (1952) (citation and internal quotation marks omitted). <u>The jury had wide latitude to award a within-range verdict regardless of the size of actual damages.</u>

…

<u>Nothing in section 1117(c) nor precedent suggests that statutory damages must be related to actual damages; instead, all signs point toward the opposite conclusion. Section 1117(c) states that plaintiffs may pursue statutory damages "instead of actual damages</u> and profits." 15 U.S.C. § 1117(c) (emphasis added). In a related context, the Copyright Act authorizes statutory damages regardless of "whether or not adequate evidence exists as to the actual damages incurred by plaintiffs." *Cable/Home Communication Corp.*, 902 F.2d at 850. That Act uses the same language as section 1117(c): plaintiffs "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(c)(1). We extend this evident principle to the trademark context. <u>As our sister circuit has explained, "[i]t makes no sense to consider the disparity between 'actual harm' and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to [*11] calculate."</u> *Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 907-08 (8th Cir. 2012).

disclosed." *Coach, Inc. v. Cellular Planet,* No. 2:09-cv-00241, 2010 U.S. Dist. LEXIS 62033, at *2 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee,* 490 F.Supp.2d 874, 882 (S.D. Ohio 2007). In setting an appropriate statutory damages amount, the Court has wide discretion. *Microsoft Corp. v. Compusource Distributors, Inc.,* 115 F.Supp.2d 800, 811-12 (E.D. Mich. 2000). However, it should be considered that the Supreme Court in *St. Louis, Iron Mountain & Southern Railway Co. v. William*s intended not to overstep Congress's provision of that discretion implying that a ratio of one cent would be sufficient damage to recover the statutorily provided $300 in damages. It also noted that the choice to award closer to the middle of the range permitted in that case, supported that due process was not violated.[3] Here, the Plaintiff seeks only a fraction of damages that would be available for non-willfull infringement, and less than 3% of the damages available for willful infringement. Its request for damages is reasonably considered to effectively deter counterfeiting and well within the statutory range available for that offense.

In addition, the court in Deckers *Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676,

---

[3] The Court in *Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, No. 24-10765, 2025 U.S. App. LEXIS 10484, at *15-16 (11th Cir. Apr. 30, 2025) clearly explained how *Williams* provides a wide ratio for punitive damages so long as they are in the range statutorily constructed by Congress:

> The within-range verdict against Star is not so disproportionate as to offend the Constitution. In *St. Louis, Iron Mountain & Southern Railway Co. v. William*s, the Supreme Court held that a statutory damages award violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." 251 U.S. 63, 66-67, 40 S. Ct. 71, 64 L. Ed. 139 (1919). As one scholar has explained, "Williams seemingly approved a very high ratio between the legislatively created remedy and potential plaintiff harm" because it "upheld the statutory maximum of $300, which would apply even if the overcharge was unintentional and only in the amount of one cent." *See* Colleen P. Murphy, Reviewing Congressionally Created Remedies for Excessiveness, 73 OHIO ST. L.J. 651, 692 (2012). In the light of Star's concession that "[t]he maximum amount of actual damages possibly supported by the evidence, assuming the jury made every inference in favor of Republic, was $200,000," the verdict in this appeal was well below that ratio. And that the verdict fell closer to the middle than the top of the range for statutory damages further confirms that it did not violate the Due Process Clause.

2020 U.S. Dist. LEXIS 150474, at *12-14 (N.D. Ill. July 13, 2020) explained clearly the harsh reality that actual damages are only one factor to consider but rather in similar cases the damages ranged widely when also considering deterrent effect and tended to be based on an award per mark as the statute considers:

> The Defendants argue that the jury award lacks a rational connection to the evidence because they estimate Deckers's actual damages to be only about $1,200. To be sure, "revenue lost is one factor to consider" in reviewing statutory damages. *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014). But there need not be a "direct correlation between statutory damages and actual damages." *Id.* Congress created statutory damages in the Lanham Act because proving actual damages in counterfeiting cases is "extremely difficult if not impossible." *Louis Vuitton Malletier S.A. v. LY USA*, Inc., 676 F.3d 83, 110 n.27 (2d Cir. 2012) (quoting S. Rep. [*13] No. 104-177, at 10 (1995)). <u>As I instructed the jury, statutory damages not only compensate the injured party, but also "discourage wrongful conduct."</u> *F.W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233, 73 S. Ct. 222, 97 L. Ed. 276 (1952). <u>Here, a reasonable jury could have been motivated by the need to punish and deter, rather than compensate.</u> *See Psihoyos*, 748 F.3d at 127 …
> Finally, the award here falls within the reasonable range of counterfeiting awards in similar cases. <u>While jury awards in analogous cases provide a reference point for assessing reasonableness, an award in another case "doesn't have to be" an "exact match" to be roughly comparable.</u> *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1008-09 (7th Cir. 2020). <u>Counterfeiting awards in other cases range from well below the award here, to the statutory maximum of $2 million.</u> *See Deckers Outdoor Corp. v. Ozwear Connection Pty Ltd.*, No. CV 14-2307, 2014 U.S. Dist. LEXIS 132169, 2014 WL 4679001, at *12 (C.D. Cal. Sept. 18, 2014…; *see also H-D U.S.A., LLC v. SunFrog, LLC*, 311 F.Supp.3d 1000, 1049 (E.D. Wis. 2018) (awarding $300,000 per mark); *Philip Morris USA Inc. v. C.H. Rhodes, Inc*., No. 08-CV-0069, 2010 U.S. Dist. LEXIS 29348, 2010 WL 1196124, at *6 (E.D.N.Y. Mar. 26, 2010) ($500,000 per mark), adopted by 2010 U.S. Dist. LEXIS 39114, 2010 WL 1633455 (E.D.N.Y. Apr. 21, 2010); [*14] *Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc*., No. CV 02-01089, 2003 U.S. Dist. LEXIS 5595, 2003 WL 23705746, at *5 (C.D. Cal. Mar. 7, 2003) ($300,000 per mark); *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 CIV. 2359, 2002 U.S. Dist. LEXIS 6657, 2002 WL 596354, at *6 (S.D.N.Y. Apr. 17, 2002) (recommending $500,000 per mark).

Here, the Plaintiff is asking for slightly less than $50,000 per mark, which is well within the range of awards that have been granted on a per mark basis.

Because the Defendants have failed to participate or respond to this action, the Plaintiff has

retained an expert to evaluate the financial disposition of retail smoke shops in the Midwest region of the United States and what amount would sufficiently deter the Defendants and others similarly situated as it relates to the damage done here to the Plaintiff. *See*. Exhibit E. This expert report's suggested damages are conservative, since available data is based on reporting, cash deals are common in this industry and counterfeiters are not likely to report or record evidence of wrongdoing. *Id*. While the Defendants probably have not sold millions of counterfeit products, they have engaged in the offer for sale of counterfeits of at least one unit and likely traded in more as similar retailers have done nationwide – including in Ohio. *See* Folkerts Decl. as to Value of Damages; *see also* Folkerts Decl. as to Damages. While actual damages to the Plaintiff may not be calculated with exact certainty, an assessment of damages has been compiled by the Plaintiff, GS HOLISTIC, LLC. *See Id*. GS HOLISTIC, LLC Owner, Chris Folkerts, states that the Plaintiff is seeking only a fraction of the actual losses to its business and that damages of $144,643.66 are reasonable since the actual damage to the business cannot reasonably be measured. *See* Exhibit E. Such irreparable harm includes loss of consumer goodwill, long-term damage to reputation, free ride taken on the Plaintiff's marketing efforts - which measure in the millions per year and diverted profits. *See Id*.

In addition, here, due to the default, the Defendants deem admitted the allegations of willfulness in the Plaintiff's Complaint. "A court may infer that a defendant's infringement is willful from the defendant's failure to defend." *Coach, Inc. v. Cellular Planet*, 2010 U.S. Dist. LEXIS 62033, *6 (S.D. Ohio June 22, 2010); *Microsoft Corp. v. McGee*, 490 F.Supp.2d at 880 (S.D. Ohio May 7, 2007). *North Atlantic Operating Company, Inc. v. JingJng Juang*, no. 15-14013-TBG [DKT. 276], at *6 (E.D. Mich. May 9, 2017); *BBK Tobacco & Foods LLP v. AAA Traders Inc. et al*, Case No. 2:19-cv-11973-AJT-RSW (E.D. Mich. 2020).

Moreover, courts find that willfulness under 15 U.S.C. § 1117(c) includes knowing, intentional, or reckless acts. *See Lorillard Tobacco Co. v. Yazan's Serv. Plaza, Inc*., 2007 U.S. Dist. LEXIS 45612, *16 (E.D. Mic. June 25, 2007); *Wildlife Express Corp. v. Carol Wright Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994)("Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights."). *H-D U.S.A., LLC v. Sunfrog, LLC*, 311 F. Supp. 3d 1000 (E.D. Wis. 2018) (Describing "ostrich-like" business tactics as constituting willful blindness and extensively analyzing the *Tiffany* innocence defense as relevant only when the Defendant actually shows up to court with a "bended knee" as opposed to ignoring the lawsuit as a nuisance.)

Here, the Defendants at least acted with willful blindness to the Plaintiff's rights. Defendants are not authorized dealers of Stündenglass products. Defendants are in the business of selling tobacco products including glass infusers and thus it can be inferred that they have knowledge of the Stündenglass brand in the smoking products market. That the Defendants did not purchase the products from GS Holistic, the product lacks an authenticity sticker which GS advertises is required to register the authentic products on its website, the product was missing parts and being sold for $386.10 when the authentic products retail for $600 circumstantially indicates that Defendants should have known that the products were not authentic. That unit's whereabouts is known, but more importantly this one is not it. Investigation could have simply constituted an inquiry with GS as to wholesaler and/or product legitimacy by phone, email, or skim of its website which makes it easy to look out for counterfeits. Nevertheless, the Defendants failed to investigate or inquire despite the ease and incredibly low burden of doing so, recklessly disregarding any potential infringement on the Plaintiff's rights, which supports willful infringement.

Statutory damages do not only compensate for injuries sustained but also act as a deterrent and discourage wrongful conduct by the defendant and others *See Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 852-53 (E.D. Mich. 2006). Based on the blatant disregard by the Defendants of this case, this Court, and the Plaintiff's rights, the damages assessment of the Plaintiff's damages expert, Prab Multani, an award of $144,643.66 (just less than $50,000 per Mark) is an appropriate award of statutory damages well within the discretion of the Court to award. This amount not only reflects actual damages suffered by the Plaintiff, but the irreparable and immeasurable harm to its reputation and sends an unequivocal message to the industry that counterfeiting will not be tolerated.

Moreover, GS believes that $144,643.66 for a statutory-damages award is in line with other statutory-damages awards determined by the courts in the Sixth Circuit in other similar counterfeit sales actions. *See JUUL Labs, Inc. v. FLI High*, LLC, 2021 U.S. Dist. LEXIS 154240, *2 (N.D. Ohio Aug. 17, 2021)(awarding $150,000 statutory damages for three marks); *BBK Tobacco & Foods LLP v. AAA Traders Inc*. et al, Case No. 2:19-cv-11973-AJT-RSW (E.D. Mich. July 23, 2020)(awarding $50,000 per trademark); *Luxottica Grp., S.p.A. v. 111 Pit Stop, Inc*., 2020 U.S. Dist. LEXIS 132462, *22 (M.D. Tenn. July 27, 2020)(awarding $100,000 per type of counterfeit mark per type of counterfeit good, for a total award of $1,000,000.); *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio June 22, 2010)(awarding plaintiff Microsoft $ 100,000 in statutory damages for each of five trademarks, plus $ 30,000 in statutory damages for each of 7 trademarks, for a total of $ 710,000 in statutory damages). *See* Exhibit D.

Furthermore, the statutory-damages award of $150,000 is in line with other statutory-damages awards made in Stündenglass cases, in various districts. *See Id*. Here, the Defendants have infringed on three of the GS's trademarks with the Registration Numbers 6,633,884,

6,174,292, and 6,174,291, justifying $144,643.66 in statutory damages.

### D. Plaintiff is Entitled to Costs of Litigation

Pursuant to 15 U.S.C. § 1117, the Plaintiff is entitled to recover the costs of the action. See 15 U.S.C. § 1117. The Plaintiff requests that this Court award costs in the total amount of $144,643.66 consisting of the filing fee ($402.00), the process server fee ($450.00), and Plaintiff's investigation fees ($451.10). See Decl. Supp. Final Default J. ¶ 6.

### E. Plaintiff is Entitled to Injunctive Relief

By the reasons explained in Plaintiff's Complaint and pursuant to 15 U.S.C. § 1116, the Plaintiff is entitled to injunctive relief. The Plaintiff requests that this Court enter an order which permanently enjoins KRAZY DAZE LLC d/b/a KRAZY DAZE and MELISSA COREY, and their agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

(a) Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit Stündenglass product identified in the complaint and any other unauthorized Stündenglass product, counterfeit, copy or colorful imitation thereof;

### F. Plaintiff is Entitled to Destruction of Infringing Products

Pursuant to 15 U.S.C. §1118, the Plaintiff requests that this Court grant an order requiring the Defendants, at their cost, deliver to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the Stündenglass Marks.

## V. CONCLUSION

Given the foregoing, this Court should grant Plaintiffs' motion in its entirety.

Date: June 20, 2025

Respectfully submitted,

*/s/ John C. Ridge, Esq.*
John C. Ridge, Esq.
OH Bar No. 0086046
Ridge Law, LLC
3136 Kingsdale Center #119
Upper Arlington, Ohio 43221
jridge@ridge-law.com
Serv609@LegalBrains.com
*Telephone: 614-561-7541*
*New Trial Attorney*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 20, 2025, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF to serve on all counsel of record.

*/s/ John C. Ridge, Esq.*
John C. Ridge, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

CASE NUMBER: 3:23-cv-00325-WHR-MRM

GS HOLISTIC, LLC,

      Plaintiff,

v.

KRAZY DAZE LLC d/b/a KRAZY
DAZE and MELISSA COREY,
      Defendants.
_____/

## **DECLARATION AS TO DAMAGES**

Pursuant to 28 U.S. Code § 1746, Christopher Folkerts, (hereinafter referred to as the "DECLARANT"), states as follows:

1.     The DECLARANT is the owner and Chief Executive Officer of the Plaintiff, GS Holistic, LLC ("GS"), a California based company.

2.     GS is the owner of three United States Trademarks related to their Stündenglass products.

3.     Since 2020, when GS began marketing and selling products with the Stündenglass Trademarks on them, we have been dealing with a massive amount of counterfeit products being sold throughout the United States, including in stores in the State of Ohio.

4.     The Stündenglass Trademarks are associated with high end, user-friendly glass infusers and related accessories, which are engineered as the most advanced and user-friendly portable vaporizers in the world due to their innovation and technology.

5.      GS has built a reputation within the industry throughout the United States based on the high quality of its products. Because of this goodwill and reputation, the Stündenglass Trademarks and GS in general have become famous.

5.      GS has built a reputation within the industry throughout the United States based on the high quality of its products. Because of this goodwill and reputation, the Stündenglass Trademarks and GS in general have become famous.

6.      The name Stündenglass and the Stündenglass Trademarks have earned a new meaning, as owning a Stündenglass product is considered luxurious and the piece is among the best glass infusers available on the market.

7.      GS sells its products under the Stündenglass Marks to authorized stores in the United States, including in Ohio.

8.      On July 25, 2023, counterfeit products bearing the Stündenglass Trademarks registered to GS were sold by the Defendant store.

9.      The Plaintiff has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of glass infusers and accessories.  GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Trademarks.

10.     The store sold the fake product bearing the Stündenglass Marks for $386.10 when the actual sales price of the real product at retail is $599.95, which is deceptive and confusing to the buyer as the price point is almost identical.

11.     The Defendant store owner, which is in the business of selling waterpipes, hookahs and glass infusers and accessories, should have known the price of Stündenglass

2

products, such as the one that was sold, and that the product the Defendants sold are of far inferior quality to the authentic Stündenglass.

12.     The Plaintiff, as well as the DECLARANT never consented to the Defendants selling goods that are not authentic (and that are inferior to) Stündenglass products, labeled with copies of the Stündenglass Trademarks.

13.     The Defendants do not have, nor did they have consent prior to this suit to sell products bearing Stündenglass marks.

14.     The sale by the Defendants of fake Stündenglass products, creates a false affiliation to GS and the Stündenglass, and creates confusion in the marketplace, and among consumers of Stündenglass products.

15.     GS sells its products nationally and internationally in both brick-and-mortar smoke shops and other outlets across the country. It essentially already occupies the market sector of smoke shops in various states, including Ohio, and has expanded to other markets such as cuisine appliances and flavor or smell infusion. GS would likely occupy the Defendants' store or at least others like it if it had been selling legitimate, instead of fake, product since the types of products it sells are those typical in the authorized stores GS already occupies.

16.     The Defendant store is in the business of selling waterpipes and accessories and should know the actual value of an authentic Stündenglass product.  Despite this knowledge, the Defendants willfully sold the fake product, for profit, while not purchasing or offering for sale real Stündenglass products from the Plaintiff.

17.     As such, the Defendants have willfully infringed on the Plaintiff's Trademarks with the Registration Numbers 6,633,884, 6,174,292 and 6,174,291.

3

Docusign Envelope ID: B5AE2EB5-F99D-4340-9A89-1A2D42D5AE3

18.     The counterfeiting and infringing actions of the Defendants have caused the Plaintiff to suffer losses, as he has lost consumer good-will, loss of brand reputation, confusion in the marketplace, and lost profits based on the systematic sale of fake Stündenglass products. Unfortunately, the DECLARANT is unable to establish the exact volume of counterfeit GS Products sold by the Defendants beyond that of the sale to the Investigator.

19.     The sale of counterfeit Stündenglass products in the marketplace is causing GS to constantly receive complaints regarding the quality of the GS's product from people who, in fact, purchased counterfeit products believing that they were purchasing genuine Stündenglass products. Due to the inferior quality and technology of the counterfeit products, unlike genuine products, they are easily broken, and consumers are reaching out to GS Consumer Support to have their products repaired relying on GS's 10-year product warranty, which is consequently causing GS to lose consumer good-will and brand reputation.

20.     Although how much of the loss of consumer good-will, loss of brand reputation, and confusion in the marketplace suffered from the Plaintiff resulted from the Defendants' counterfeiting and infringing actions is not easy to determine due to the lack of the Defendants' participation in the lawsuit, every counterfeiting and infringing sale made by the Defendants have contributed to the Plaintiff's losses.

21.     While the Defendants probably have not sold millions of counterfeit products, it has engaged in the purchase and sale of counterfeits of at least one unit, and likely traded in more as similar retailers have done nationwide as well as in Ohio.

22.     The counterfeiting and infringing actions of smoke shops and their owners are rampant in this industry.

23.     The Defendants and others in the industry need to be deterred from continuing their counterfeiting and infringing conduct, justifying the Plaintiff's request for statutory damages and request for injunctive relief.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on 6/20/2025 _____.

_____

CHRISTOPHER FOLKERTS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

CASE NUMBER: 3:23-cv-00325-WHR-MRM

GS HOLISTIC, LLC,

         Plaintiff,

v.

KRAZY DAZE LLC d/b/a KRAZY
DAZE and MELISSA COREY,
         Defendants.
_____/

## DECLARATION AS TO VALUE OF DAMAGES

Pursuant to 28 U.S. Code § 1746, Christopher Folkerts, (hereinafter referred to as the "DECLARANT"), states as follows:

1.     The DECLARANT is the owner and Chief Executive Officer of the Plaintiff, GS Holistic, LLC ("GS"), a California based company.

2.     GS is the owner of three United States Trademarks related to their Stündenglass products.

3.     Since 2020, when GS began marketing and selling products with the Stündenglass Trademarks on them, we have been dealing with a massive amount of counterfeit products being sold throughout the United States, including in stores in the State of Ohio.

4.     The Stündenglass Trademarks are associated with high-end, user-friendly glass infusers and related accessories, which are engineered as the most advanced and user-friendly portable vaporizers in the world due to their innovation and technology.

5.     In keeping with this superior standard, the sellers of Stündenglass products must be authorized retailers in order to sell genuine products.

6.     The name Stündenglass and the Stündenglass Trademarks have earned a new meaning, as owning a Stündenglass product is considered among the best glass infusers available.

7.     The Plaintiff, as well as the DECLARANT never consented to the Defendants selling goods that are not authentic (and that are inferior to) Stündenglass products, labeled with copies of the Stündenglass Trademarks.

8.     The sale of counterfeit Stündenglass products has almost devastated the marketplace. In fact, the Plaintiff had trouble entering the marketplace because of the sheer amount of counterfeit Stündenglass products for sale at cheaper prices and at inferior quality and technology.

9.     When the DECLARANT himself has visited stores around the United States, or representatives of the DECLARANT have gone to stores, the stores have been flooded with counterfeit Stündenglass products.

10.     It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products. For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600, with a range of $199 to $600.

11.     To date, Investigators for the DECLARANT have visited more than a total of 4954 stores around the country, and the total number of counterfeit Stündenglass products purchased from these stores was 977. Based on this ratio, approximately one-fifth of the stores are selling counterfeit products.

12. The sale of counterfeit products has substantially hurt DECLARANT's company and the influx of fake Stündenglass products has damaged the growth of the Plaintiff company.

I declare under penalty of perjury that the foregoing is true and correct. Executed on
6/20/2025
_____.

Signed by:
_____
CHRISTOPHER FOLKERTS

Docusign Envelope ID: 1424BC3E-9EB5-478C-85D4-333DC6780A45

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| GS HOLISTIC, LLC, | ) |
| | ) |
| Plaintiff | ) Civil Case No. 3:23-cv-00325-WHR-MRM |
| v. | ) |
| | ) |
| KRAZY DAZE LLC d/b/a KRAZY DAZE | ) |
| and MELISSA COREY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF ATTORNEY IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT FINAL JUDGMENT PURSUANT TO F.R.C.P. 55(b)

Pursuant to 28 U.S. Code § 1746, John C. Ridge, counsel for the Plaintiff, GS HOLISTIC, LLC, states as follows:

1. The Plaintiff filed its Amended Complaint on January 10, 2024 [DE 3].

2. The Summons and the Complaint were served on the Defendant, KRAZY DAZE LLC d/b/a KRAZY DAZE and MELISSA COREY, on January 25, 2024 [DE 14, 14-1]

3. The Defendants did not file any responsive pleading or otherwise respond to the Complaint.

4. Rule 55(a) default was entered against the Defendants on January 22, 2025 [DE 18].

5. On information and belief, the Defendants are not infants, incompetent natural persons, or persons in military service or otherwise exempted from default judgment under the Solders' and Sailors' Civil Relief Act of 1940.

6. The Plaintiff reasonably estimates that it spent approximately $1,303.10 in costs consisting of the filing fee ($402.00), the process server fee ($450.00), and the investigation fee ($451.10).

I declare under penalty of perjury that the foregoing is true and correct.    Executed on

6/20/2025
_____.

Signed by:
_____

—89D7691222FD455...

JOHN C. RIDGE

# United States of America

## United States Patent and Trademark Office

# STÜNDENGLASS

**Reg. No. 6,174,291**

**Registered Oct. 13, 2020**

**Int. Cl.: 34**

**Trademark**

**Principal Register**

GS Holistic, LLC  (DELAWARE LIMITED LIABILITY COMPANY)
#301
644 N. Fuller Avenue
Los Angeles, CALIFORNIA 90036

CLASS 34: Gravity water pipes for smoking purposes

FIRST USE 8-28-2016; IN COMMERCE 2-24-2019

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY
PARTICULAR FONT STYLE, SIZE OR COLOR

SER. NO. 88-851,003, FILED 03-27-2020



Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,174,292**

**Registered Oct. 13, 2020**

**Int. Cl.: 34**

**Trademark**

**Principal Register**

GS Holistic, LLC (DELAWARE LIMITED LIABILITY COMPANY)
#301
644 N. Fuller Avenue
Los Angeles, CALIFORNIA 90036

CLASS 34: Gravity water pipes for smoking purposes

FIRST USE 8-28-2016; IN COMMERCE 2-24-2019

The mark consists of the letter "S" through the center of which is capsule shape.

SER. NO. 88-851,033, FILED 03-27-2020





Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

# STÜNDENGLASS

**Reg. No. 6,633,884**

**Registered Feb. 01, 2022**

**Int. Cl.: 11, 21**

**Trademark**

**Principal Register**

GS Holistic, LLC (DELAWARE LIMITED LIABILITY COMPANY)
#301
644 N. Fuller Avenue
Los Angeles, CALIFORNIA 90036

CLASS 11: Devices used to smoke foods and drinks, namely, clearomizers, vaporizers, cartomizers, atomizers, and heating elements that create vapor and smoke from oils and smoke fuels that are then water filtered in a gravity water filter that are then directed via an opening to infuse the vapor and smoke into foods and drinks

FIRST USE 8-28-2016; IN COMMERCE 2-24-2019

CLASS 21: Food and beverage infusers

FIRST USE 8-28-2016; IN COMMERCE 2-24-2019

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 6174291

SER. NO. 90-724,818, FILED 05-20-2021





Performing the Functions and Duties of the
Under Secretary of Commerce for Intellectual Property and
Director of the United States Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.





# MODÜL™

The Modül is a versatile battery-powered heater for dry materials or concentrates that replaces the magnetic elbow of any Stundenglass or Kompact. Featuring a full-color display and magnetic atomizer attachments, the Modül adds customization to your Stundenglass for a whole new elevated experience.

## Modül for Concentrate
SGM-MIC-STBK-02
$349.95

## Modül for Dry Material
SGM-MRS-STBK-02
$349.95

• Compatible with quartz atomizers for concentrates and dry material, with automatic detection.

• High resolution full color display.

• Durable, lightweight anodized aluminum casing.

• Durable travel case with 3 tank capacity.

• 6,000mAh rechargeable battery with USB-C and pass-through technology.

| | | |
|---|---|---|
| **Modül Quartz Concentrate Tank** | SGM-CNT-STBK-02 | $74.95 |
| **Modül Dry Material Tank** | SGM-SIT-STBK-02 | $74.95 |
| **Modül Dry Material Convection Tank** | SGM-VPT-STBK-02 | $74.95 |
| **Modül Charging Cable** | SGM-CBL-STEE-02 | $4.95 |
| **Modül Replacement Carb Cap** | SGM-CAP-STBK-02 | $19.95 |
| **Modül Loading Tool** | SGM-TOL-STBK-02 | $4.95 |
| **Modül Magnetic Connection Ring** | SGM-ADP-STBK-02 | $24.95 |
| **Modül Tank Sleeve with O-Rings** | SGM-SLV-STBK-02 | $4.95 |

## FEATURES:

**PERCOLATED WATER FILTRATION** heat is contained in an anodized aluminum and glass smoking chamber, resulting in cool, water filtered smoke at release.

**360° ROTATABLE ACTIVATION** uses kinetic motion activation, cascading water and opposing air flow technology to deliver the most powerful and unique smoke infusion experience.

**LARGE BURN CHAMBER** allows for longer smokes and easy loading.

**INDUSTRIAL GRADE** food safe materials with anodized metal construction, made with professionals in mind.

**MAGNETIC ATTACHMENTS** designed to fit the silicone hose compatible with both beverage and tray cloche

**EASY MAINTENANCE** Durable globes are easy to assemble and clean.





**Stündenglass® + Stündenglass KOMPACT™**

**COMPATIBLE WITH:**

Hookah · Concentrates · Flower · Aromatherapy · Culinary · Mixology





GRATEFUL DEAD

×

$tündenglass KOMPACT

Grateful Dead X
Stündenglass Kompact
Gravity Infuser

SG2-KIT-STBK-02

MSRP: **$599.95**

CONTENTS INCLUDE:
(1) Glass + Aluminum Infuser
(1) Infusion Chamber
(1) Glass Liner
(1) Aluminum Tray
(1) 15 ft. Silicon Hose
(1) 14 mm Male-To-Male Adapter
(1) Cleaning Kit
(1) Travel Case



Tyson 2.0 X
Stündenglass
Gravity Infuser

SG2-KIT-TYRD-O2

MSRP: **$599.95**

Tyson 2.0 X
Stündenglass
The Champion's
Globe

SG2-CGV-GLSS-O2

MSRP: **$99.95**

Tyson 2.0 X
Stündenglass
The Champion's
Globe – Red

SG2-RGV-GLSS-O2

MSRP: **$99.95**

Tyson 2.0 X
Stündenglass Wall
Mount

SG2-WMT-TYRD-O2

MSRP: **$59.95**

Tyson 2.0 X
Stündenglass
Wand

SG2-MPC-TYRD-O2

MSRP: **$11.95**



**Cookies x Stündenglass Infusion Chamber Assembly**
SG2-HBA-COBL-02
MSRP: **$69.95**

**Cookies x Stündenglass Hose Clip**
SG2-HLD-STBL-02
MSRP: **$14.95**

**Cookies x Stündenglass Hose Assembly**
SG2-HAS-COBL-02
MSRP: **$59.95**

**Cookies x Stündenglass Mouthpiece Stem**
SG2-MPS-COBL-02
MSRP: **$11.95**

**Cookies x Stündenglass Wall Mount**
SG2-WMT-COBL2-02
MSRP: **$59.95**

**Cookies x Stündenglass Upstem (Small)**
SG2-UPS-COBL-02
MSRP: **$24.95**

**Cookies x Stündenglass Gravity Infuser**
SG2-KIT-COBL2-02
MSRP: **$599.95**

**Cookies x Stündenglass Upstem (Large)**
SG2-UPL-COBL-02
MSRP: **$24.95**





**Dr. Greenthumbs x Stündenglass Infusion Chamber Assembly**
SG2-HBA-GRGR-O2
MSRP: $69.95

**Dr. Greenthumbs x Stündenglass Hose Clip**
SG2-HLD-STGR-O2
MSRP: $14.95

**Dr. Greenthumbs x Stündenglass Hose Assembly**
SG2-HAS-GRGR-O2
MSRP: $59.95

**Dr. Greenthumbs x Stündenglass Mouthpiece Stem**
SG2-MPS-GRGR-O2
MSRP: $11.95

**Dr. Greenthumbs x Stündenglass Wall Mount**
SG2-WMT-GRGR-O2
MSRP: $59.95

**Dr. Greenthumbs x Stündenglass Upstem (Small)**
SG2-UPS-GRGR-O2
MSRP: $24.95

**Dr. Stündenglass Gravity Infuser**
SG2-KIT-GRGR-O2
MSRP: $599.95

**Dr. Greenthumbs x Stündenglass Upstem (Large)**
SG2-UPL-GRGR-O2
MSRP: $24.95





## Taylor Gang X Stündenglass Gravity Infuser

SG2-KIT-TGGO-02  **$599.95**

**CONTENTS INCLUDE:**
(1) Glass + Aluminum Infuser
(1) Infusion Chamber
(1) Glass Liner
(1) Aluminum Tray
(1) 3 ft. Silicon Hose
(1) 14 mm Male-To-Male Adapter
(1) Cleaning Kit

### Taylor Gang x Stündenglass Wall Mount
SG2-WMT-TGGO-02     MSRP: **$59.95**

### Taylor Gang x Stündenglass Wand
SG2-MPS-TGGO-02     MSRP: **$11.95**







**Stündenglass**

# ASH CATCHER

**Stündenglass
Ash Catcher
Assembly**

SG2-ASH-STBK-02
MSRP: **$79.95**

**Stündenglass
Ash Catcher
Replacement Glass**

SG2-AGL-GLSS-02
MSRP: **$29.95**







**Gray Glass Hose Tip**
SG2-AHT-GLSS-O2
$19.95

**Mouthpiece Stem**
SG2-MPS-STBK-O2
$9.95

**Hose Splitter**
SG2-SPL-STBK-O2
$24.95

**Blue Glass Hose Tip**
SG2-BHT-GLSS-O2
$19.95

**Glass Hose Tip**
SG2-HTP-GLSS-O2
$19.95

**Hose Clip**
SG2-HLD-STBK-O2
$14.95

**Pink Glass Hose Tip**
SG2-IHT-GLSS-O2
$19.95

**Plastic Hose Tip**
SG2-PHT-STBK-O2
$9.95

**Kompact Hose Assembly**
SG3-HAS-STBK-O2
$49.95

**Green Glass Hose Tip**
SG2-GHT-GLSS-O2
$19.95

**Bubble Glass Hose Tip**
SG2-RHT-GLSS-O2
$19.95

**Stündenglass Hose Assembly**
SG2-HAS-STBK-O2
$49.95

**Small Globe Kit**
SG2-SGK-GLSS-O2
$119.95

**Single Purple Glass Globe**
SG2-UGL-GLSS-O2
$79.95

**Single Gray Glass Globe**
SG2-MGL-GLSS-O2
$79.95

**Single Replacement Kompact Globe**
SG3-GLB-GLSS-O2
$39.95

**Single Bubble Glass Globe**
SG2-RGL-GLSS-O2
$79.95

**Single Pink Glass Globe**
SG2-PGL-GLSS-O2
$79.95

**Single Replacement Small Globe**
SG2-SGL-GLSS-O2
$49.95

**Kompact Pineapple Globe (Single)**
SG3-PPL-GLSS-O2
$59.95

**Single Green Glass Globe**
SG2-GGL-GLSS-O2
$79.95

**Single Replacement Large Globe**
SG2-GLB-STBK-O2
$59.95

**Stündenglass Pineapple Globe (Single)**
SG2-PPL-GLSS-O2
$79.95

**Single Blue Glass Globe**
SG2-BGL-GLSS-O2
$79.95



**Glass Liner (Green)**
SG2-GRL-GLSS-O2
$34.95

**Glass Liner (Clear)**
SG3-GBL-GLSS-O2
$25.95

**Glass Liner (Pink)**
SG2-PIL-GLSS-O2
$34.95

**Glass Liner (Black)**
SG2-BKL-GLSS-O2
$34.95

**Glass Liner (Purple)**
SG2-PUL-GLSS-O2
$34.95

**Glass Liner (Blue)**
SG2-BLL-GLSS-O2
$34.95



**Stündenglass Uplight**
SG2-ULT-STEE-O2
$39.95





| | | |
|---|---|---|
| "Jawsome" Glass Hose Tip SG2-HTP-EWS-O2 $49.95 | "Tyson 2.0 Glove" Glass Hose Tip SG2-HTP-ETGV-O2 $49.95 | "Across The Universe" Glass Hose Tip SG2-HTP-EATU-O2 $59.95 |
| "Ollie The Octopus" Glass Hose Tip SG2-HTP-EOTO-O2 $49.95 | "Roo Beans" Glass Hose Tip SG2-HTP-ETEN-O2 $49.95 | "Garden Variety Collection" Glass Hose Tip SG2-HTP-ESGD-O2 $59.95 |
| "Save The Bees" Glass Hose Tip SG2-HTP-ESTB-O2 $49.95 | "Fingerlick'ing Good" Glass Hose Tip SG2-HTP-EFLG-O2 $49.95 | "Renew The Redwoods" Glass Hose Tip SG2-HTP-ERTR-O2 $49.95 |
| "Cactus" Glass Hose Tip SG2-HTP-KCTC-O2 $49.95 | "Koi Roi" Glass Hose Tip SG2-HTP-EKOR-O2 $49.95 | "Panda Panda Panda" Glass Hose Tip SG2-HTP-EPPP-O2 $49.95 |





STUNDENGLASS.COM
WHOLESALE:
SALES@STUNDENGLASS.COM

| Date | Event | Location |
| --- | --- | --- |
| 3/13/2020 | Spannabis | Barcelona, Spain |
| 6/29/2021 | Bar & Nightclube Show | Las Vegas, NV |
| 3/11/2022 | Spannabis | Barcelona, Spain |
| 3/21/2022 | Bar & Nightclube Show | Las Vegas, NV |
| 5/21/2022 | National Resturant Association Show | Chicago, IL |
| 7/15/2022 | Mary Jane | Berlin, Germany |
| 7/26/2022 | Champs Trade Show | Las Vegas, NV |
| 8/6/2022 | Louisiana Restaurant Association Show | Louisiana |
| 10/5/2022 | Hall Of Flowers | Santa Rosa, CA |
| 11/1/2022 | Champs Trade Show | Daytona, FL |
| 11/16/2022 | MJ Bizcon | Las Vegas, NV |
| 2/1/2023 | Champs Trade Show | Las Vegas, NV |
| 2/8/2023 | Champs Trade Show | Las Vegas, NV |
| 3/10/2023 | Spannabis | Barcelona, Spain |
| 5/9/2023 | Champs Trade Show | Atlantic City |
| 6/6/2023 | Champs Trade Show | Chicago, IL |
| 6/14/2023 | Flower Expo | Boston, MA |
| 6/23/2023 | Mary Jane | Berlin, Germany |
| 7/19/2023 | Champs Trade Show | Las Vegas, NV |
| 9/14/2023 | Alt Expo | Las Vegas, NV |
| 9/27/2023 | Champs Trade Show | Denver, CO |
| 10/25/2023 | Champs Trade Show | Tampa, FL |
| 11/29/2023 | MJ Bizcon | Las Vegas, NV |
| 2/14/2024 | Champs Trade Show | Las Vegas, NV |
| 4/15/2024 | Spannabis | Barcelona, Spain |
| 4/18/2024 | Mid Mo Cannabis Expo | St. Louis, MO |
| 4/19/2024 | National Cannabis Festival | Washington, D.C. |
| 5/7/2024 | Champs Trade Show | Atlantic City |

| | | |
|---|---|---|
| 6/4/2024 | Champs Trade Show | Chicago, IL |
| 6/14/2024 | Mary Jane | Berlin, Germany |
| 7/23/2024 | Champs Trade Show | Las Vegas, NV |
| 9/7/2024 | The Miracle In Mundelein | Mundelein, IL |
| 9/20/2024 | Spannabis | Bilbao, Spain |
| 11/1/2024 | ExpoCannabis | Argentina, Spain |
| 2/12/2025 | Champs Trade Show | Las Vegas, NV |
| 3/13/2025 | Spannabis | Barcelona, Spain |
| 12/4/20224 | MJ Bizcon | Las Vegas, NV |



GRAVITY INFUSER

**Consumer Sophistication**

In 2017, Seth Rogan broke the internet when he posted his Stündenglass prototype on Instagram, making it one of the most sought after devices in the industry.

Grenco Science acquired Stündenglass in 2019 to redesign the product for mass production as well as to develop it into a smoking/infusing platform.

In four short years, Stündenglass has transcended the industry and been featured on HBO Max* and Paramount in Selena + Friends (cooking show) as well as Bar Rescue.

Stündenglass has even reached cult like status with an appearance in GTA 5* the video game in 2023.

*both available globally



TURN YOUR WORLD UPSIDE DOWN



# Stündenglass®

GRAVITY POWERED,
CONTACTLESS WATER PIPE

Function, craftsmanship and a timeless design aesthetic establish Stündenglass™ as the defining smoking culture piece in any contemporary dwelling. The patented 360 degree gravity system leads the industry forward with an exceptional smoking experience.

Stündenglass has carved out a culturally relevant niche through its strategic collaborations with diverse partners such as DGT, Cookies, the Grateful Dead, Bllrdr, and Mike Tyson. These partnerships not only reflect the brand's commitment to music, art, and sports but also underscore its role as a cultural touchstone. Its multifaceted utility makes it a versatile tool for consumption, hookah enthusiasts, and those interested in infusing food and beverages with unique flavors. This adaptability resonates with a broad audience, catering to both seasoned aficionados and newcomers alike.

In the wake of the COVID-19 pandemic, Stündenglass has proven instrumental in revitalizing the restaurant industry by offering innovative experiences. As people seek novel dining and social engagement, the brand's contactless design provides a safe yet engaging experience.

Stündenglass has garnered significant media attention, being featured on Selena + Friends' cooking show and the popular TV series Bar Rescue. It has also earned accolades, winning an award from F+B Magazine. Further amplifying its cultural relevance, Stündenglass was even included as an element in the acclaimed video game GTA 5, cementing its status as a brand that transcends boundaries and resonates with contemporary culture.

# Our Community

**Across the major platforms, we have amassed, engaged and managed a community of over 350K strong.**



# Television Appearances

STÜNDENGLASS PRODUCT USED BY SELENA GOMEZ AND CHEF @KRISTENLKISH ON HBO MAX SHOW "SELENA + CHEF"



Selena + Friends is available in HBO UK, HBO India, Australia and Canada









# STÜNDENGLASS PRODUCTS FEATURED ON MULTIPLE EPISODES OF "BAR RESCUE" ON THE PARAMOUNT NETWORK





**jontaffer** ✔

**1,436**
Posts

**306K**
Followers

**288**
Following

**Jon Taffer**
Host & Executive Producer of @barrescuetv
New York Times Best-Selling Author
Founder of @TaffersTavern
linktr.ee/jontaffer

















# INFLUENCERS

## Over 1 Billion Social Media Impressions

| | | |
|---|---|---|
| @Wizkhalifa | @okokcreative | @_lunita |
| @gethigheverywhere | @dankdabber | @420.doll |
| @koalapuffss | @Pete.710 | @itsiitliz420 |
| @silencedhippie | @coralreefer420 | @danielanthonyboro |
| @dankdalia | @kimmytanofficial | @southerndabber_420 |
| @yola_youtube | @Aliciagoku_ | @jaminthevan |
| @stoner_dottie | @cannabis_coach | @brittneyyevettegrine |
| @thathighcouple | @ihatespencernuzzi | @californiaclouds420 |
| @trippydripp_ill | @pothead.princess | @weedwookie |
| @soapierae | @vancityvapereviews | @princess.dabs |
| @erickkhan_ | @gravy.giggles | @_shawncameron |
| @queenncyn | @jjordanmarie | @420oldfatlesbians |
| @bentleyrolling | @mathias_710wrx | @thestonermom |
| @jennywakeandbake | @highgenevievee | @_mr.thc |
| @thedabspot | @_dabbinduchess | @imedwinsparks |
| @ripmyoldaccount | @haritahov | @cloud_9_baby |
| @stoner_dottie | @weedstagram416 | @durtedom |
| @highrisetv | @mikebudz | @dabbingcuban |
| @medicatedmarley | @jacquichilds | |
| @blazedsamm | | |



# FEATURED MIXOLOGISTS











**FEATURED CHEFS**



# PUBLICITY

Stündenglass has been featured in hundreds articles over the past four years.

Here are some of the highlights....



design\milk°

# Futuristic Kinetic Motion Waterpipe

08.31.20 | By Gregory Han

Read ⌄





## High Art

The Stündenglass Gravity Motion Hookah stands as an artistic statement piece as much as it serves as a means to smoking. Reviews are mixed on this one but it does the job and looks absolutely amazing. Debates are ongoing if the hefty price tag is worth the splurge, but if you're seeking a show-stopping piece that's also functional, the Stündenglass could be what you've been searching for. This gravity infuser is destined to be a party favorite, offering communal smoking experience without direct mouth contact.

## Forbes

### STÜNDENGLASS KOMPACT GRAVITY INFUSER

*"The Stündenglass Kompact Gravity Infuser is bound to be one of the best gifts your bartender friend has received all year, possibly ever…"*

## Esquire



## GEEKSPIN

### STÜNDENGLASS REVIEW – A SUPER SMOOTH AND GORGEOUS MULTI-PURPOSE GRAVITY HOOKAH

This stunning gravity hookah is a triple threat



*STUNDENGLASS KOMPACT REVIEW: THIS LUXURY GRAVITY INFUSER IS WORTH THE PRICE*
*The Stundenglass Kompact is a state-of-the-art 360° rotating gravity infuser*



*"Aside from ripping hits, the Stundenglass can be used to infuse smoke into food and drinks…"*





**The Whisk(e)y Wash**

*"Gravity" Infuser Maker Stündenglass Enters Cocktail Smoke Infusing*

## Cigar Snob

### Mancave Essentials: Stündenglass Gravity Beverage Infuser



*"Science should be a mancave staple, and this infuser is sure to bring out the Pasteur in you. It's a device that will smoke your cocktail under glass, using gravity that pulls smoke from a bowl, into a glass globe that, when rotated, sends the cooled smoke through a tube and into a high-quality glass cloche, which holds your cocktail..."*

## FOOD&BEVERAGE MAGAZINE



**Award-Winning Stündenglass Gravity Beverage Infuser Adds Smokey Flavor to Cocktails and Beverages**



HOME JOURNAL MARY FEST MARY CREATIVE AGENCY NEWSLETTER

# MARY

**STÜNDENGLASS INTRODUCES THE MODÜL DŌK, A FIRST-OF-ITS-KIND ADDITION TO YOUR GLASSWARE**



COOL MATERIAL

Gear

## Tested: New Stündenglass Modül Dok Easily Swaps Between Concentrate and Flower

February 28, 2024

By Nickolaus Hines

Gear ⌄  Tech ⌄  Watches ⌄  Fashion ⌄  Lifestyle ⌄  Guides ⌄  Steals

Share:





# Video Games

## - GTA 5

In 2023, Stündenglass was included in Grand Theft Auto V5 as an accessory. Video games reach a vast audience across various demographics globally. This was recognized and noted by a popular blogger as the brand had no influence on this inclusion.



**International Recognition**

Stündenglass has emerged as an internationally relevant brand, establishing strategic partnerships across music, art, and sports. With collaborations that include the international Cookies brand, B Real of Cypress Hill, the Grateful Dead, and Mike Tyson, Stündenglass has firmly positioned itself at the intersection of culture and innovation. Notably, the brand's versatility allows it to be used for consumption, hookah, and even infusing food and beverages, catering to a diverse range of enthusiasts and connoisseurs alike.

Post-COVID, Stündenglass has become a game-changer for the restaurant industry, offering patrons new and exciting experiences that are both safe and memorable. As people seek unique dining and social experiences, the brand's contactless design ensures that it can be shared without compromising on safety. This innovation has not only enhanced the dining experience but also contributed significantly to the bottom line for restaurants looking to adapt and thrive in the post-pandemic landscape. With features in prominent lounges and restaurants in Spain, Nederlands, Dubai, Hong Kong and beyond, Stündenglass continues to make waves internationally, solidifying its reputation as a brand that combines luxury, safety, and innovation.









# Our Community

**Across the major platforms, we have amassed, engaged and managed a community of over 350K strong.**









**Partners**

# Influencers

## Over 1 Billion Social Media Impressions

@Wizkhalifa
@gethigheverywhere
@koalapuffss
@silencedhippie
@dankdalia
@yola_youtube
@stoner_dottie
@thathighcouple
@trippydripp_ill
@soapierae
@erickkhan_
@queenncyn
@bentleyrolling
@jennywakeandbake
@thedabspot
@ripmyoldaccount
@stoner_dottie
@highrisetv
@medicatedmarley
@blazedsamm

@okokcreative
@dankdabber
@Pete710
@coralreefer420
@kimmytanofficial
@Aliciagoku_
@cannabis_coach
@ihatespencernuzzi
@pothead.princess
@vancityvapereviews
@gravy.giggles
@jjordanmarie
@mathias_710wrx
@highgenevievee
@_dabbinduchess
@haritahov
@weedstagram416
@mikebudz
@jacquichilds

@_lunita
@420.doll
@itsitliz420
@danielanthonyboro
@southerndabber_420
@jaminthevan
@brittneyyevettegrine
@californiaclouds420
@weedwookie
@princess.dabs
@_shawncameron
@420oldfatlesbians
@thestonermom
@_mr.thc
@imedwinsparks
@cloud_9_baby
@durtedom
@dabbingcuban



**MJBiz**Daily

*Phenotypes & Partnerships: How Cookies Became an International Brand*

Cookies started modestly in a garage in San Francisco, today it is a global empire, with a presence in 7 U.S. states and five countries (Canada, UK, Spain, Israel and Thailand) and selling more than co-founder Berner could have ever imagined. In this episode of Seed to CEO, Berner talks with MJBiz CEO Chris Walsh about how he built Cookies into one of the most recognizable brands in the world.





# Forbes

**Berner**

*Cofounder, Cookies*

Bay Area rapper and entrepreneur Berner has leveraged his huge social media audience to build Cookies into one of the country's best-known retail brands with shops in most major markets. Cookies is also one of the first companies to begin building an international presence, with its stores and brands becoming available in Canada, the U.K., Israel and Thailand.



# MAXIM

## *Cypress Hill's B Real Debuts Luxury Hookah With Dr. Greenthumb's & Stündenglass*

Cypress Hill rapper and noted connoisseur B Real is teaming with glassmaker Stundenglass to create a luxury gravity hookah for his brand Dr. Greenthumb's.

Hot on the heels of the hip-hop legend's other collaboration with G Pen, this fancy new contraption is a far cry from the typical communal water pipes found at your local hookah lounge.

As the collab announcement puts it, the pipe "elicits a powerful experience without having to share contact by generating kinetic motion activation via cascading water, opposing airflow technology and the natural force of gravity." The promotional video above shows how it works. There's two separate glass globe chambers—one for water, one for smoke—attached to an anodized aluminum frame on a swivel, allowing for 360 degrees of vertical rotation.

When the smoke chamber is filled in the upper position, it's then lowered to the bottom position. Gravity pushes the water from the upper chamber into the lower chamber, which in turn pushes the smoke out of the hose and mouthpiece. Hence the far-out "gravity hookah" moniker.





SHOP SKUNK MERCH   CANNABIS WORLD NEWS ˅   ORGANIC GROWING ˅   CONSUMER EDUCATION ˅   INDUSTRY & BUSINESS ˅   HEALTH & WELLNESS ˅   LEGALIZATION ˅   LIFESTYLE & CULTURE ˅

HOME › TEN YEARS OF EXCELLENCE AT GRENCO SCIENCE... › SKUNK'S JULIE CHIARIELLO INTERVIEWS B-REAL

# TEN YEARS OF EXCELLENCE AT GRENCO SCIENCE – PART 2: SKUNK'S JULIE CHIARIELLO INTERVIEWS B-REAL

BY JULIE CHIARIELLO
02/10/2023

**W**e feel supremely blessed and honored to have the incredible B-Real gives us a moment of his time to celebrate Grenco Science and the Dr. Greenthumb relationship. B-Real is an absolute legend who has activated millions to become more conscious globally. It's amazing how many growers tell me they got into growing because of the Dr. Greenthumb song and Cypress Hills' outstanding legacy of music. I'll never forget bumping that basse in a lowrider down Main St in the 90s when Black Sunday first came out! Thank you for all you have done for humanity. We appreciate you immensely.

**Julie Chiariello: When do you first recall seeing or trying a G Pen?**

B-Real: This goes back to a High Times event; I saw Snoop was first promoting it and pushing on this brand.

**JC: Would love to hear a story or memory about the G Pen DGT lineup. What is your favorite device?**

BR: Favorite device is the Connect, DGT and GPen and Slundenglass; the Connect goes with that, so it makes it very efficient to use. We use the Connect with Slundenglass every day on the Dr. Greenthumb's Show, the show we do a 30-minute no-expletive challenge, no cursing; whoever curses has to do five flips from the Slundenglass; for that, we use concentrates, so we use the G-Pen Connect.

BUSINESS INSIDER

MARKETS INSIDER

My Watchlist

Search markets

# Wiz Khalifa's Taylor Gang Collaborates with Stündenglass to Introduce the Taylor Gang x Stündenglass

↑ SHARE

PRESS RELEASE PR Newswire

⊙ Feb. 17, 2022, 09:15 AM

LOS ANGELES, Feb. 17, 2022 /PRNewswire/ -- Multi-platinum selling, GRAMMY® and Golden Globe nominated recording artist Wiz Khalifa and his entertainment company Taylor Gang Ent., which includes artists Ty Dolla $ign, Juicy J, and Berner among others, have collaborated with Stündenglass, the world's first gravity powered infuser, to introduce the iconic gold and black Taylor Gang x Stündenglass. Taylor Gang x Stündenglass launches on February 17, 2022 exclusively at **stundenglass.com/taylorgang.**

## Your Market View

| NAME | | PRICE | +/- | % | DATE |
|------|--|-------|-----|---|------|
| ▲ | TSLA | 146.85 | -0.22 | -0.15 | Official Close 4/19/2024 |
| ▲ | AAPL | 164.39 | -0.55 | -0.33 | Official Close 4/19/2024 |
| ▲ | MSFT | 397.00 | -2.11 | -0.53 | Official Close 4/19/2024 |
| ▲ | NFLX | 550.88 | -4.37 | -0.79 | Official Close 4/19/2024 |
| ▲ | SPOT | 275.60 | -0.19 | -0.07 | Official Close 4/19/2024 |







CANNABIS ☀ AFICIONADO

AFICIONADOS    CANNABIS ˅    INDUSTRY INNOVATORS    SHOP    SIGN IN    SIGN OUT    SUBSCRIBE

*CULTURE*

# Wiz Khalifa Debuts New Taylor Gang x Stündenglass Collab

Published 2 years ago on February 20, 2022

By **Cannabis Aficionado**





STUPID**DOPE**

ART + DESIGN    CANNABIS NEWS    LATEST

HOME    TRAVEL    TECH    STYLE    RIDES

# Mike Tyson Introduces Champion's Glove Globe Gravity Infusion Waterpipe

LEVAR THOMAS    10/26/2022    1 MINUTE READ









 

## Grateful Dead Vapes and Infusers Coming This Fall

In what some may be surprised to find out is a first, the band will be launching a line of advanced vapes and infusers this fall, thanks to a new partnership with brand Grenco Science.

*"We couldn't be more thrilled to finally bring this dream collaboration to fruition with the Grateful Dead,"* Chris Folkerts, the CEO of Grenco Science, shares. "For over 10 years, we've been working towards this moment and it's a true honor to create products for their devoted fans."

Folkerts, a Dead fan himself, adds, *"We were beyond excited to create innovative products that stay true to the essence of the Grateful Dead and their incredible legacy."*

The Dead line of G Pen vaporizers and Stündenglass Gravity Infusers will feature the band's iconic imagery.

# JAMBASE

## *Stündenglass Unveils Grateful Dead Gravity Infuser Collection*

Grateful Dead and Stündenglass — creators of the world's first gravity powered infuser — unveiled the first in a line of co-branded Grateful Dead gravity infusers. The Grateful Dead x Stündenglass and Grateful Dead x Stündenglass Kompact are available now in stores and online.

Both the Grateful Dead x Stündenglass and Grateful Dead x Stündenglass Kompact — the latter designed for those on the go, coming pre-assembled in a robust and convenient carrying case — utilize the power of gravity "to propel smoke using kinetic energy and deliver an immersive and powerful experience," as per a press release.

More on the Grateful Dead x Stündenglass and Grateful Dead x Stündenglass Kompact: "Engineered with precision machined hardware, they both feature two borosilicate glass globes for gravitationally delivered water filtration: flipping the devices pulls water through the two way aluminum steel upstem and pushes smoke out."

"At Stündenglass, our relentless dedication has allowed us to forge collaborations with some of the most legendary figures in entertainment history," CEO of Stündenglass Chris Folkerts. "The Grateful Dead stands as the apex, selecting only the finest to epitomize the talent they personify. We are delighted to unveil the debut of our initial two products within the Grateful Dead collection. Our unwavering commitment ensures that we honor their enduring legacy."



# Television Appearances

*Selena* + CHEF

STÜNDENGLASS PRODUCT USED BY SELENA GOMEZ AND CHEF @KRISTENLKISH ON HBO MAX SHOW "SELENA + CHEF"



selenagomez ✿

1,828 Posts  341M Followers  221 Following

**Selena Gomez**
Musician/band
By grace, through faith.
Founder @rarebeauty
Founder/CIO @officialwondermind
linktr.ee/selenagomez

for Selena + Chef
for Selena + Chef
Season four

HBOmax

Selena + Friends is available in HBO UK, HBO India, Australia and Canada







# Video Games - GTA 5

Video games reach a vast audience across various demographics globally. This was recognized and noted by a popular blogger as the brand had no influence on this inclusion.

GTA is one of the biggest action-adventure games available on Playstation.

In 2023, Stiindenglass was included in Grand Theft Auto V5 as an accessory.





# EXHIBIT C - COUNTERFEIT AND AUTHENTIC

## COUNTERFEIT















Where the Daze Now by

**Krazy Daze LLC**
3674 E NATIONAL RD
SPRINGFIELD, OH 455051545
9372449055

Cashier: Tristan
25-Jul-2023 4:38:41P

Transaction **204642**
1    Gravity Bong Stubin Glass          $400.00

**Subtotal**                                **$400.00**
**Select Member**                          **-$40.00**
Tax              7.25%                     $26.10

**Total**                                   **$386.10**

CREDIT CARD SALE                          $386.10
AMEX 1017

Retain this copy for statement validation

25-Jul-2023 4:38:57P
$386.10 | Method: EMV
AMERICAN EXPRESS XXXXXXXXXXXX1017
 BRYAN MALAMUT
Reference ID: 320600535508 | Auth ID:
884662
MID: ****6086
AID: A000000025010801
AthNtwkNm: AMEX

Must be 21 to purchase nicotine products.
24hr warranty on all vape mods. Sales are final
on disposable nicotine devices, Carts, Kratom,
Glass and clearance marked items. Thank you
for your business.

6CQZYBRDGQ78E

Clover ID: K98HJNB9V5GJ0
Payment 6CQZYBRDGQ78E

Clover Privacy Policy
https://clover.com/privacy

## AUTHENTIC FROM PLAINTIFF'S WEBSITE









**EXHIBIT D - Awards of $150,000 Dollars or more in Statutory Damages**

Below provided by the Plaintiff is a list of judgments from its active cases wherein a federal court has awarded the Plaintiff $150,000 or more to date. The following awards include awards from California, Illinois, Florida, Texas, Michigan and Wisconsin.

1. *GS Holistic, LLC. v. Cali Smoke Depot LLC et al* (2:22-cv-06679-SPG-KS) for **$150,000** in statutory damages and $1,276.86 in costs. *See GS Holistic, LLC v. Cali Smoke Depot LLC*, 2024 U.S. Dist. LEXIS 85413. (California)
2. *GS Holistic, LLC. v. Beverly Vapes Inc et al* (2:22-cv-08095) for **$150,000** in statutory damages and $1,130.88 in costs. *See GS Holistic, LLC v. Beverly Vapes Inc.*, 2023 U.S. Dist. LEXIS 233868, 2023 WL 9319024 (California)
3. *GS Holistic, LLC. v. Hollywood Zaza Smoke&Vape LLC et al* (2:22-cv-07448) for **$150,000** in statutory damages and $1,166.65 in costs. *See GS Holistic, LLC v. Hollywood Zaza Smoke*, 2023 U.S. Dist. LEXIS 68046 (California)
4. *GS Holistic, LLC. v. Smokeyz Inc et al* (2:22-cv-05651-JFW-GJS) for **$150,000** in statutory damages and $897.50 in costs. *See GS Holistic, LLC v. Smokeyz, Inc*., 2023 U.S. Dist. LEXIS 27596, 2023 WL 9319028 (California)
5. *GS Holistic, LLC. v. Smokers Cave, Inc. et al* (2:22-cv-07445-DMG-MRW) for **$150,000** in statutory damages and $1,097.00 in costs. *See GS Holistic, LLC v. Smokers Cave, Inc*., 2023 U.S. Dist. LEXIS 85063, 2023 WL 4205826 (California)
6. *GS Holistic, LLC. v. Quality Experience et al* (2:22-cv-07201-SPG-PVC) for **$150,000** in statutory damages and $917.00 in costs. *See GS Holistic, LLC v. Quality Experience*, 2023 U.S. Dist. LEXIS 137461 (California)
7. *GS Holistic, LLC. v. Beyond CBD and Vape* (2:23-cv-03390) for **$151,236.55** in statutory damages. *See GS Holistic, LLC v. Beyond CBD &Vape*, 2023 U.S. Dist. LEXIS 151499 (C. D. Cal. 2023)
8. *GS Holistic, LLC. v. Natts Smoke II Inc* (2:22-cv-06840) for **$150,532** in statutory damages. *See GS Holistic, LLC v. Natts Smoke II Inc.*, 2023 U.S. Dist. LEXIS 124873, 2023 WL 5017994 (C.D. Cal. 2023).
9. *GS Holistic, LLC. v. SMGM Smoke Shop Inc* (2:22-cv-06858) for **$151,230** in statutory damages. *See GS Holistic, LLC v. SMGM Smoke Shop, Inc*., 2023 U.S. Dist. LEXIS 204072, 2023 WL 7514141 (C.D. Cal. 2023).
10. *GS Holistic, LLC. v. Zee Smoke Shop* (2:22-cv-06869) for **$151,038.55** in statutory damages. *See GS Holistic, LLC v. Zee Smoke Shop, Inc*., 2023 U.S. Dist. LEXIS 114264, 2023 WL 5504933 (C.D. Cal. 2023).
11. *GS Holistic, LLC. v. P&I Forever Corp d/b/a Quality Cigarette* (5:23-cv-01330) for **$150,925.28** in statutory damages. *See GS Holistic, LLC v. P&I Forever Corp*., 2024 U.S. Dist. LEXIS 14691 (C.D. Cal. 2024).
12. *GS Holistic, LLC. v. United Smokes Inc* (5:23-cv-00454) for **$150,872.70** in statutory damages. *See GS Holistic, LLC v. Cali Bear Smoke Shop*, 2023 U.S. Dist. LEXIS 193427 (C.D. Cal. 2023).

13. *GS Holistic, LLC. v. Purple Haze of Seminole LLC et al* (8:22-cv-02113-VMC-AEP) for $**150,000** in statutory damages and $977.52 in costs. (Florida) See *GS Holistic, LLC v. Purple Haze of Seminole, LLC*, 2023 U.S. Dist. LEXIS 79966 (M. D. Fla. 2023)

14. *GS Holistic, LLC. v. Envirocure, LLC. and, Hassan Abid* (22-cv-60463-BLOOM/Valle) for $**151,147.89** in statutory damages. (Florida) See *GS Holistic, LLC v. Envirocure, LLC*, 2022 U.S. Dist. LEXIS 90016 (S. D. Fla. 2022)

15. GS Holistic, LLC v. PRSN, LLC, 2024 U.S. Dist. LEXIS 127038 (M.D. Fla., July 18, 2024) for $150,000 in statutory damages.

16. *GS Holistic, LLC. v. Pyramids Hookah Lounge LLC* (4:23-cv-00872-P) for $**200,623.50** in statutory damages. See *GS Holistic, LLC. v. Pyramids Hookah Lounge LLC* 2024 U.S. Dist. LEXIS 117066 (N.D. Texas 2024).

17. *GS Holistic, LLC. v. Bellair Cigarettes Inc et al One Stop Vape et al* (2:22-cv-06363-GW-MRW) for $**150,000** in statutory damages and $955.69 in costs. (California) GS Holistic, LLC v. Bellair Cigarettes Inc., 2023 U.S. Dist. LEXIS 243375 (C.D. Cal. May 1, 2023)

18. *GS Holistic, LLC. v. Pyramids Wholesale et al* (2:22-cv-04632-SPG-RAO) for $**300,000** in statutory damages and $1,462 in costs. (California) GS Holistic, LLC v. Pyramids Wholesale Inc., 2023 U.S. Dist. LEXIS 243667 (C.D. Cal. Feb. 23, 2023)

19. *GS Holistic, LLC. v. ABC Tobacco LLC et al* (2:22-cv-06105) for $**150,000** in statutory damages and $442.51 in costs. (California) (NO ANALYSIS) GS Holistic, LLC v. ABC Tobacco LLC, 2023 U.S. Dist. LEXIS 243674 (C.D. Cal. April 5, 2023)

20. *GS Holistic, LLC. v. Mountain Smoke Shop, Inc et al* (2:22-cv-07411) for $**150,000** in statutory damages and $1,095.39 in costs. (California) (no analysis but under briefs) GS Holistic, LLC v. Mt. Smoke Shop, Inc., 2023 U.S. Dist. LEXIS 243432 (C.D. Cal. March 14, 2023)

21. *GS Holistic, LLC. v. Bubbles Smoke Shop* (2:23-cv-03391) for $**150,176.40** in statutory damages. (California) GS Holistic, LLC v. Bubbles Smoke Shop, 2024 U.S. Dist. LEXIS 193017 (C.D. Cal. Jan. 29, 2024)

22. *GS Holistic, LLC. v. Raven's Smoke Shop, Inc.* (2:22-cv-07199) for $**150,796.90** in statutory damages. (California). *See* GS Holistic, LLC v. Ravens Smoke Shop, Inc., 2023 U.S. Dist. LEXIS 233854, 2023 WL 9319242 (C.D. Cal. Dec. 1, 2023).

23. *GS Holistic, LLC. v. Smoke Unlimited et al* (1:22-cv-21254-FAM) for $**250,000** in statutory damages and $563.41 in costs. (Florida) (NO ANALYSIS) GS Holistic, LLC v. Smoke Unlimited, LLC, 2023 U.S. Dist. LEXIS 243668 (S.D. Fla, Feb. 15 , 2023)

24. *GS Holistic, LLC. v. Hella Smokes Inc et al* (1:22-cv-21173-KMM) for $**150,000** in statutory damages and $952.00 in costs. (Florida) GS Holistic LLC v. Hella Smokes Inc., 2023 U.S. Dist. LEXIS 243438 (S.D. Fla, May 19, 2023)

25. *GS Holistic, LLC. v. High Expectations of South Florida Inc et al* (2:22-cv-14371-AMC) for $**300,000** in statutory damages. (Florida) GS Holistic, LLC v. High Expectations of S. Fla. Inc., 2023 U.S. Dist. LEXIS 243444 (S.D. Fla. June 16, 2023)

26. *GS Holistic, LLC. v. Smoke Bucks #2 Inc et al* (3:22-cv-01332-HES-LLL) for $**150,000** in statutory damages and $984.49 in costs. (Florida) GS Holistic, LLC v. Smoke Bucks #2 Inc., 2023 U.S. Dist. LEXIS 243426 (M.D. Fla. July 17, 2023)

27. *GS Holistic, LLC. v. Smoke Bucks Inc et al* (3:22-cv-01331-HES-MCR) for $150,000 in statutory damages and $984.49 in costs. (Florida) GS Holistic, LLC v. Smoke Bucks, Inc., 2023 U.S. Dist. LEXIS 243441 (M.D. Fla. July 26, 2023)

28. *GS Holistic, LLC. v. CMCR ENTERPRISES, INC* (3:22-cv-01198) for $ **300,929.99** in statutory damages. (Florida) GS Holistic, LLC v. CMCR Enters., 2023 U.S. Dist. LEXIS 243670 (M.D. Fla. Dec. 13, 2023)

29. *GS Holistic, LLC. v. Lazie Daze LLC* (2:23-cv-14104) for **$200,672** in statutory damages. (Florida) GS Holistic LLC v. Lazie Daze LLC, 2023 U.S. Dist. LEXIS 243708 (S.D. Fla. Aug. 4, 2023)

30. *GS Holistic, LLC. v. Venice Smoke Shop Inc* (3:22-cv-01365) for **$151195.15** in statutory damages. (Florida) GS Holistic, LLC v. Venice Smoke Shop Inc., 2023 U.S. Dist. LEXIS 243443 (M.D. Fla. Aug. 14, 2023)

31. *GS Holistic, LLC. v. AMPR Group INC* (3:22-cv-22301) for $**151,066.99** in statutory damages. (Florida) GS Holistic, LLC v. Ampr Grp. Inc., 2023 U.S. Dist. LEXIS 243442 (N.D. Fla. Oct. 24, 2023)

32. *GS Holistic, LLC. v. Martin & Company Inc* (3:22-cv-01362) for $**151,227.89** in statutory damages. (Florida) GS Holistic, LLC v. Martin & Co. Inc., 2024 U.S. Dist. LEXIS 172940 (M.D. Fla. Jan. 9, 2024)

33. *GS Holistic, LLC. v. Miami Smoke Shop LLC* (3:22-cv-01333) for $ **150,984** in statutory damages. (Florida) GS Holistic, LLC v. Mia. Smoke Shop LLC, 2023 U.S. Dist. LEXIS 243669 (M.D. Fla. Nov. 29, 2023)

34. *GS Holistic, LLC. v. Abood Enterprise et al* (1:22-cv-06161) for $**150,000** in statutory damages and $817 in costs. (Illinois) GS Holistic, LLC v. Abood Enter. LLC, 2023 U.S. Dist. LEXIS 243848 (N.D. Ill. May 30, 2023).

35. *GS Holistic, LLC. v. Windy City Tobacco & Vape of Aurora* (1:23-cv-05156) for $**150,817** in statutory damages. (Illinois) GS Holistic, LLC v. Windy City Tobacco, 2024 U.S. Dist. LEXIS 202064 (N.D. Ill. March 14, 2024).

36. *GS Holistic, LLC. v. Marley's Smoke & Vape Inc* (1:23-cv-05168) for $**151,052** in statutory damages. (Illinois) GS Holistic, LLC v. Marley's Smoke & Vape, Inc., 2023 U.S. Dist. LEXIS 243850 (N.D. Ill. Oct. 25, 2023).

37. *GS Holistic, LLC. v. Halsted Smoke Shop Inc.* (1:23-cv-04930) for $**151,049.48**in statutory damages. (Illinois) GS Holistic, LLC v. Halsted Smoke Shop Inc., 2023 U.S. Dist. LEXIS 243849 (N.D. Ill. Dec. 12, 2023).

38. *GS Holistic, LLC. v. Inferno Vape & Smoke Inc* (1:23-cv-04714) for $ **151,012.06** in statutory damages. (Illinois) GS Holistic, LLC v. Inferno Vape & Smoke Inc., 2024 U.S. Dist. LEXIS 202054 (N.D. Ill. Jan. 24, 2024).

39. *GS Holistic, LLC. v. Ash's Tobacconist Inc* (1:23-cv-04482) for $**150,924.88** in statutory damages. (Illinois) GS Holistic, LLC v. Ash's Tobacconist Inc., 2023 U.S. Dist. LEXIS 243852 (N.D. Ill. Nov. 15, 2023). GS Holistic, LLC v. Tiger Zone 2 Inc., 2024 U.S. Dist. LEXIS 201753

40. *GS Holistic, LLC. v. Tiger Zone 2 INC* (1:23-cv-04944) for $**150,000.00** in statutory damages against each defendant. GS Holistic, LLC v. Tiger Zone 2 Inc., 2023 U.S. Dist. LEXIS 243851 (N.D. Ill. Oct. 19, 2023) GS Holistic, LLC v. Tiger Zone 2 Inc., 2024 U.S. Dist. LEXIS 201753 (N.D. Ill. March 13, 2024).

41. *GS Holistic, LLC. v. Skil Vape LLC* (1:23-cv-04956) for $**150,817.16** in statutory damages. (Illinois) GS Holistic, LLC v. Skil Vape LLC, 2024 U.S. Dist. LEXIS 201735 (N.D. Ill. Feb. 26, 2024).

42. *GS Holistic, LLC. v. Uptown Smokes Inc* (1:23-cv-04753) for **$150,000** in statutory damages. (Illinois) GS Holistic, LLC. v. Uptown Smokes Inc., 2024 U.S. Dist. LEXIS 193143 (N.D. Ill. March 1, 2024).

43. *GS Holistic, LLC. v. Mohammed Abdul Sayeed* (1:23-cv-05154) for **$100,978.2** in statutory damages. (Illinois) GS Holistic, LLC v. Sayeed, 2023 U.S. Dist. LEXIS 243846 (N.D. Ill. Oct. 30, 2023).

44. *GS Holistic, LLC. v. 7 Heaven Smoke Shop Inc* (1:23-cv-04710) for **$151,469.64** statutory damages. (Illinois) GS Holistic, LLC v. Heaven Smoke Shop Inc., 2024 U.S. Dist. LEXIS 201733 (N.D. Ill. March 20, 2024).

45. *GS Holistic, LLC. v. Aladdin Smoke Shop LLC* (4:23-cv-00349) for **$150,687** in statutory damages. (Texas) GS Holistic LLC v. Aladdin Smoke Shop, LLC., 2024 U.S. Dist. LEXIS 193082 (N.D. Tex. Jan. 29, 2024)

46. *GS Holistic, LLC. v. Smoke Out Vape LLC* (4:23-cv-00699) for **$150,642.3** in statutory damages. (Texas) GS Holistic LLC v. Smoke Out Vape, LLC, 2023 U.S. Dist. LEXIS 243427 (N.D. Tex. Dec. 11, 2023).

47. *GS Holistic, LLC. v. H&L Smokes, LLC* (4:23-cv-00458) for **$150,592** in statutory damages. (Texas) GS Holistic, LLC v. H&L Smokes, LLC, 2023 U.S. Dist. LEXIS 243429 (N.D. Tex. Nov. 16, 2023).

48. *GS Holistic, LLC. v. Blue Ocean Group Inc* (4:23-cv-00503) for **$150,566** in statutory damages. (Texas) GS Holistic LLC v. Blue Ocean Grp. Inc., 2023 U.S. Dist. LEXIS 243430 (N.D. Tex. Dec. 11, 2023).

49. *GS Holistic, LLC. v. SK Trade Group, Inc* (4:23-cv-00253-ALM) for **$200,688.38** in statutory damages. (Texas) GS Holistic, LLC v. SK Trade Grp., Inc., 2024 U.S. Dist. LEXIS 201754 (E.D. Tex. May 2, 2024).

50. *GS Holistic, LLC. v. BlackHawks Chief Tobacco & Vape Corporation* (1:23-cv-00744-WCG) for **$150,827.00** in statutory damages. (Wisconsin) GS Holistic, LLC v. Tobacco, 2024 U.S. Dist. LEXIS 201803 (E.D. Wis. April 9, 2024)

51. *GS Holistic, LLC. v. Oshkosh Smoke & Vape Inc* (1:23-cv-01507-WCG) for **$151,173.99** in statutory damages. (Wisconsin) GS Holistic LLC v. Oshkosh Smoke & Vape Inc., 2024 U.S. Dist. LEXIS 196849 (E.D. Wis. March 18, 2024).

52. *GS Holistic, LLC. v. Glass Monkey SmokeShops, LLC* (1:23-cv-00746-WCG) for **$151,408.83. GS Holistic, LLC v. Glass Monkey Smokeshops, LLC, 2024 U.S. Dist. LEXIS 193117** (E.D. Wis. March 28, 2024).

53. *GS Holistic, LLC v. Big Ape Smokerz, LLC* for **$150,000.00** in statutory damages. *GS Holistic, LLC v. Big Ape Smokerz, LLC, 2024 U.S. Dist. LEXIS 154754, 2024 WL 3967271* (E.D. Mich. Aug. 28, 2024).

54. *GS Holistic, LLC. v. Hookah Tower 1 LLC* for **$150,000.00** in statutory damages. *GS Holistic, LLC v. Hookah Tower 1 LLC, 2024 U.S. Dist. LEXIS 201793* (E.D. Mich. Aug. 6, 2024).

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

GS HOLISTIC, LLC,

                Plaintiff,

     vs.

KRAZY DAZE LLC d/b/a KRAZY DAZE and
MELISSA COREY,

                Defendants.

Case Number: 3:23-cv-00325-WHR-CHG

**EXPERT REPORT OF PRAB MULTANI**

June 20, 2025

## Table of Contents

I. BACKGROUND ........................................................................................................ 1

    1. The Plaintiff ................................................................................................. 2

    2. The Defendants ........................................................................................... 2

    3. The Accused Products ................................................................................ 2

    4. The Assignment .......................................................................................... 3

II. METHODOLOGY EMPLOYED ....................................................................... 3

III. DEFENDANTS' FINANCIAL PERFORMANCE .......................................... 5

    1. Comparable Marketplace Transactions ................................................... 5

    2. Projecting Defendants' Financial Performance ...................................... 7

IV. THE ACCUSED PRODUCTS CONTRIBUTIONS ....................................... 9

V. DETERENCE CHANGE MULTIPLIER ....................................................... 14

VI. CONCLUSIONS ................................................................................................. 15

EXHIBIT A: DOCUMENTATION RELIED ON ................................................ 17

EXHIBIT B: PRAB MULTANI CV ........................................................................ 20

## I. BACKGROUND

1.  I, Prab Multani, have been retained as a damages expert representing the plaintiff in the case of GS HOLISTIC, LLC ("Plaintiff" or "GS") v. KRAZY DAZE LLC d/b/a KRAZY DAZE and MELISSA COREY, ("Defendants"). This matter is Case No. 3:23-cv-00325-WHR-CHG.

2.  I lead the Business Valuation practice at Acclimation Group; a specialized consulting firm focused on intellectual property valuation and economic damages calculations. My professional experience includes performing business valuations for privately held companies, with particular emphasis on sole proprietorships operating in regulated sectors. Specific to this assignment, I have conducted numerous valuations within the tobacco retail industry and have served as a strategic advisor to clients applying for dispensary licenses under the New York State Cannabis Control Board.

3.  My advisory work includes engagements involving the acquisition and divestiture of Ohio-based businesses engaged in the sale of tobacco and smoking-related products. I have also led economic valuation analyses in transactional contexts involving retail facilities, supporting clients through due diligence and negotiation phases. In addition, I have assisted with litigation consulting assignments involving intellectual property disputes, including trademark infringement and other lost profits calculations. My experience spans both State and Federal litigation matters. I earned a Bachelor of Arts degree in Economics from Binghamton University, where I completed coursework in quantitative methods, industrial organization, and microeconomic modeling.

4.  In accordance with the Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, I have provided a list of the documents I relied upon in the preparation of this report in Exhibit A, along with my CV attached as Exhibit B. I can affirm that my opinions presented in this report are within a degree of reasonable certainty based on the evidence reviewed and methodologies employed.

### 1. The Plaintiff

5.  GS Holistic, LLC is a Delaware LLC with its principal place of business located at 7162 Beverly Boulevard, Suite 207, Los Angeles, California 90036.[1] GS is a prominent manufacturer and distributor of high-quality smoking accessory products, specializing in the premium brand Stündenglass.[2] The company has developed a strong reputation in the industry through consistent brand development. GS owns federally registered trademarks, including for Stündenglass, and is recognized for its commitment to innovation and quality in the smoking accessories market.[3]

### 2. The Defendants

6.  The Defendants operate the KRAZY DAZE smoke shop located at 3674 East National Road, Springfield in Ohio. They operate as a retailer and are not involved in the wholesale distribution of smoke-related products and accessories.

### 3. The Accused Products

7.  According to the legal complaint, the Plaintiff alleges that the Defendants' smoke shop sold counterfeit products. Specifically, the Plaintiff claims Glass Infusers (the "Accused Products") are infringing their Stündenglass trademarks. The intellectual property (IP) claimed to be infringed includes:

    - U.S. Trademark Registration Number 6,633,884

    - U.S. Trademark Registration Number 6,174,292

---

[1] https://www.bbb.org/us/ca/los-angeles/profile/online-retailer/gs-holistic-llc-1216-1000009512
[2] https://stundenglass.com
[3] https://uspto.report/company/Gs-Holistic-L-L-C

- U.S. Trademark Registration Number 6,174,291

**4. The Assignment**

8. As part of my assignment, I was asked to determine a reasonable monetary award for the Plaintiff aimed at deterring the Defendants from further sales of the Accused Products. This assessment involved a three-step process:

- (1) Estimating the Defendants' discretionary earnings related to their entire business using publicly available information from smoke shops in the Midwest region;

- (2) Determining what percentage of the total revenue is attributable to the Accused Products; and

- (3) Applying a deterrence multiplier grounded in peer-reviewed literature to effectively prevent such activity.

9. The analysis and opinions presented in this report assume that the Plaintiff prevails in its claims outlined in the legal complaint. These analyses and opinions reflect my findings as of the report date. Should any additional information arise, I reserve the right to revise my analysis and opinions accordingly.

10. For the preparation of this report, I am being compensated at an hourly rate of $300. Time spent at deposition and trial will also be billed at this same hourly rate. My compensation is independent of, and will not be influenced by, the outcome of the case.

## II. METHODOLOGY EMPLOYED

11. I understand Plaintiff's claims involve counterfeiting under the Lanham Act. Typically, when an expert is quantifying damages pursuant to a Lanham Act violation, the plaintiff is able to seek the

actual losses incurred by the plaintiff, any profits gained by the defendant as a result of the infringement, and the costs of the action. These approaches are called lost profits and disgorgement of profits.

12. In most instances, an expert would rely on a defendant's financial records, such as sales data and quantities sold, to evaluate the economic impact of their actions and determine an appropriate monetary award. However, as it relates to this case, the Defendants' financial records are unavailable. Therefore, in rendering my opinion, I relied on publicly available data, a methodology that other experts have employed and is generally accepted in such circumstances. Furthermore, I supplemented my analysis with industry research and market analyses from IBISWorld.[4]

13. Specifically, I used ValuSource Market Comps, a recognized and industry-standard database that provides financial metrics for sole proprietorships and local businesses.[5] The methodology involved selecting a sample of smoke shop transactions from ValuSource Market Comps that aligned with the Defendants' known operational characteristics, such as geographic region and estimated business scale. By calculating the average revenue and profit margins of these comparable businesses, I derived a reasonable estimate of the defendant's financial capacity and the potential profitability of continuing to sell the Accused Products.

14. Furthermore, the methodology I employed for the deterrence multiplier is one that has been accepted in courts without exclusion.[6] I would like to point out that all calculations in this report

---

[4] https://www.ibisworld.com/united-states/industry/tobacconists/5954/
[5] ValuSource content is accepted in U.S. Tax Court *(Bauer v. IRS: T.C. Memo. 2012-156)*
[6] E. Jean Carroll v. Donald J. Trump, No. 22-10016 (2d Cir. 2022) & John H. Schnatter v. 247 Group, LLC, No. 3:20-cv-00003 (W.D. Ky. 2022)

are based on verifiable transactional data and follow a scientific methodology that can be independently replicated by another expert.

### III. DEFENDANTS' FINANCIAL PERFORMANCE

15. First, I relied on ValuSource to estimate the Defendants' financial performance. ValuSource is a reputable source of marketplace transactions, specializing in business valuation multiples for over 30 years.[7] Based on the industry type, ValuSource provides Private Market Transaction datasets that include financial metrics, offering insights into the profitability of comparable business transactions.

#### 1. Comparable Marketplace Transactions

16. ValuSource data can be filtered by Standard Industrial Classification (SIC) codes, which are four-digit numerical codes assigned to U.S. businesses based on their primary industry. These codes facilitate the classification and comparative analysis of economic activity across sectors, allowing for more accurate benchmarking and industry-specific valuation insights.[8] Smoke shops are establishments that primarily engage in the retail sale of cigarettes, cigars, tobacco, and smokers' supplies, closely aligned with SIC Code 5993.[9] Therefore, I conducted a query for SIC Code 5993 on ValuSource to retrieve the transactions of smoke shops nationwide over the last 10 years.

17. This structured query produced a dataset consisting of 24 comparable transactions.[10] I then filtered the comparable transactions to include only smoke shops located in the Midwest Census Region. This geographic focus was chosen due to proximity to the Defendants' operations, ensuring that

---

[7] www.valusource.com/about-us/
[8] https://www.investopedia.com/terms/s/sic_code.asp
[9] https://www.naics.com/sic-industry-description/?code=5993&v=2022
[10] See Schedule 2.

the selected data reflects similar economic factors such as customer demand, product mix, and regional pricing pressures.

18. After filtering the data based on geography, I narrowed the comparable transactions from 24 to 3 comparable transactions.[11] Each of the three small businesses is comparable to the Defendants' business, as they operate within the same industry (SIC 5993 - Tobacco and Smoke Shops), meaning that they offer similar products and serve comparable retail customer bases. The three transactions used in my analysis are presented in Figure 1 below:

*Figure 1 - Midwest Smoke Shops – Comparable Transactions[12]*

| State | Sale Date | Sales | DE | Price | Price / Sales | Price / DE |
|-------|-----------|-------|-----|-------|---------------|------------|
| IL | 04/05/16 | $265,000.00 | $66,000.00 | $155,000.00 | 0.6x | 2.3x |
| OH | 03/03/16 | $300,000.00 | $70,000.00 | $149,000.00 | 0.5x | 2.1x |
| MO | 08/14/18 | $552,000.00 | $81,000.00 | $323,000.00 | 0.6x | 4.0x |
| **Average** | 1/6/2017 | $372,333.33 | $72,333.33 | $209,000.00 | 0.6x | 2.8x |

19. As shown in Figure 1, the Midwest Smoke Shops data indicates that these businesses have an average revenue of $372,333.33 and an average Discretionary Earnings (DE) of $72,333.33. Calculating the DE margin by dividing the average DE by the average sales yields a margin of approximately 19.43%. In other words, the financial performance of these three businesses is likely comparable to what the Defendants' financial performance is.

20. DE reflects the total financial benefit a business owner receives, encompassing salary, fringe benefits, interest, and non-cash expenses. In small retail operations like smoke shops, DE serves as a more reliable indicator of cash flow and owner profitability than net income or operating profit. This is because such businesses are often owner-operated, with the owner's compensation

---

[11] See Figure 1.
[12] See Schedule 4.

and personal expenses closely integrated with the business finances. Therefore, DE is the most relevant metric for damage calculations as it provides an appropriate basis for estimating economic benefit.

2. **Projecting Defendants' Financial Performance**

21. Based on comparable marketplace transactions, I estimated the annual revenue and discretionary earnings (DE) the Defendants could have generated. While I understand that the Plaintiff began selling the Stündenglass Infusers in 2020, I focused on the period from 2020 to 2029 in my model to ensure consistency in estimating an appropriate monetary award. This 10-year projection period is supported by manufacturer warranties and the typical lifecycle of durable smoking accessories.

22. The Plaintiff provides a 10-year limited warranty on Stündenglass Infusers, indicating a long useful life for this class of durable, high-cost smoking accessories.[13] Furthermore, this long-lasting warranty period supports the assumption of a 10-year projection period, reflecting the expected durability and extended useful life of this class of high-cost smoking accessories.

23. I then projected the revenue beginning in 2018 as the base period, applying a compounded annual growth rate (CAGR) of 4.4%, in line with IBISWorld's Tobacco Store Industry analysis.[14] I would like to point out that the 4.4% CAGR is conservative, as it is based on general tobacco store industry data and does not consider the impact of the recent legalization of recreational cannabis in Ohio, which took effect in August 2024.[15] With over 100 new dispensaries projected to open across the state in 2025, and statewide cannabis sales expected to exceed $1 billion by 2025 and

---

[13] https://stundenglass.com/pages/warranty
[14] https://www.ibisworld.com/united-states/industry/tobacconists/5954/
[15] https://www.pbs.org/newshour/politics/ohio-votes-to-legalize-marijuana-for-adult-recreational-use-becoming-24th-state-to-do-so

reach $1.65 billion by 2027, the downstream demand for smoking accessories could likely grow at a faster rate.[16]

24. Finally, I projected discretionary earnings beyond 2018 by applying the historical DE margin of 19.43% to each year's projected revenue, which was based on the marketplace transactions.[17] Based on this framework, the data suggests that the DE generated by the Defendants to be $1,112,140.40 from 2018 to 2029.[18] This calculation is shown at Figure 2 below:

*Figure 2 – Projected Discretionary Earnings (2018-2029)*

| Year | Revenue | DE Margin | DE |
|------|---------|-----------|-----|
| 2018 | $372,333.33 | 19.43% | $72,333.33 |
| 2019 | $388,716.00 | 19.43% | $75,516.00 |
| 2020 | $405,819.50 | 19.43% | **$78,838.70** |
| 2021 | $423,675.56 | 19.43% | **$82,307.61** |
| 2022 | $442,317.29 | 19.43% | **$85,929.14** |
| 2023 | $461,779.25 | 19.43% | **$89,710.02** |
| 2024 | $482,097.53 | 19.43% | **$93,657.26** |
| 2025 | $503,309.83 | 19.43% | **$97,778.18** |
| 2026 | $525,455.46 | 19.43% | **$102,080.42** |
| 2027 | $548,575.50 | 19.43% | **$106,571.96** |
| 2028 | $572,712.82 | 19.43% | **$111,261.13** |
| 2029 | $597,912.18 | 19.43% | **$116,156.62** |
| | | **Total:** | **$1,112,140.40** |

25. The $1,112,140.40 represents the total DE and does not constitute damage, as the Defendants sell other products unrelated to the Accused Products. In the following section of my report, I will assess and determine the proportion of the DE attributable specifically to the Accused Products.

---

[16] https://www.ideastream.org/economy/2025-04-04/smoke-smart-ohio-consumers-and-dispensaries-can-cultivate-a-quality-cannabis-experience & https://www.cannabisbusinesstimes.com/us-states/ohio/news/15687244/ohios-cannabis-market-projected-to-exceed-1-billion-in-sales-by-2027

[17] This approach assumes a steady-state operational model and adopts a conservative stance, considering that the two lowest-value transactions in the dataset occurred in 2016, prior to the selected base year.

[18] Schedule 3 — Damages Model

## IV. THE ACCUSED PRODUCTS CONTRIBUTIONS

26. Profit apportionment involves determining the portion of a defendant's economic benefit that can be attributed to various factors. In this case, I am specifically quantifying the percentage of the DE that is attributable to the Accused Products. Regarding apportionment, the Federal Circuit has acknowledged that it "never required absolute precision in this task; on the contrary, it is well-understood that this process may involve some degree of approximation and uncertainty."[19]

27. Therefore, as part of my analysis, I reviewed industry research to estimate an appropriate apportionment rate. Smoke shops engage in sales of a wide variety of products, namely tobacco products and various smoking accessories, but not all products contribute equally to sales and profits. According to industry research, despite tobacco products dominating smoke shop sales by volume, smoking accessories such as vaporizers and water pipes often yield significantly higher margins.[20] This distinction is critical when assessing economic benefit from the alleged infringing activity.

28. The product mix in smoke shops comprises of tobacco products and smoking accessories. Tobacco products are further categorized as cigarettes, cigars, and loose tobacco, which dominate the smoke shop product mix, despite a 35% decline in cigarette sales between 2012-2022.[21] Smoking accessories are further categorized by product types including water pipes, vaporizers, rolling paper, grinders, and other miscellaneous items such as lighters.[22]

---

[19] VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308 (Fed. Cir. 2014)
[20] https://verticaliq.com/product/tobacco-and-smoke-shops/#row-unique-3 & https://www.posnation.com/blog/is-a-smoke-shop-a-profitable-business
[21] https://www.ftc.gov/system/files/ftc_gov/pdf/2022-Cigarette-Report.pdf
[22] https://www.imarcgroup.com/smoking-accessories-market

**ACCLIMATION**
G R O U P

29. The Accused Products fall within the smoking accessory category, specifically under the high-margin yielding water pipes. This product type is generally purchased by consumers seeking specialized or premium products, sometimes in connection with cannabis usage, which has experienced significant expansion in states such as Ohio.

30. Industry research indicates that vaporizers and e-cigarettes can account for up to 30% of sales in smoke shops.[23] Furthermore, a 2023 nationwide survey completed by retail smoke shop owners indicated that glass products, including waterpipe hookahs, are stable, and vaping products, including vaporizers, have a similar growth trajectory to the 30% mentioned above.[24] A smoking accessories market size analysis and industry forecast for 2020-2030, completed by Allied Market Research, indicates that water pipes will dominate the accessory market and retain their dominance throughout the forecast period until 2030.[25] Based on these findings, vaporizers and waterpipe products are a material component in smoke shop revenue, aligning with the Accused Products' market positioning.

31. Industry research conducted by the IMAC Group confirms that vaporizers stand as the largest component of the smoking accessories market in 2024, due to a shift in more discreet alternatives to traditional smoking methods.[26] Vaporizers, including e-cigarettes, are a fast-growing segment in the U.S. market, and were valued at $8.98 billion in 2022 with a 29.8% CAGR.[27] Despite the rise of modern smoking alternatives, glass water pipes remain staple in many smoke shops. They offer a classic and reliable smoking method to users as they are known for their durability, aesthetic

---

[23] https://verticaliq.com/product/tobacco-and-smoke-shops/#row-unique-3
[24] https://phoeniciangrinders.com/blogs/news/smoke-shop-market-analysis-2023-ytd?srsltid=AfmBOorLG8Jt4uunaJyG7vmwcwfQJQSWOnmkymYzKf1Lg8lA5p3IB9Rc
[25] https://www.alliedmarketresearch.com/smoking-accessories-market-A16013
[26] https://www.imarcgroup.com/smoking-accessories-market
[27] https://www.grandviewresearch.com/industry-analysis/us-e-cigarette-vape-market

appeal, and water-filtration benefits, which continues to attract consumers seeking premium smoking experience.[28] Water pipes, including infusers and hookahs, are a niche but expanding category and are forecasted to attribute a critical portion to the smoking accessories market share.[29]

32. Another factor I considered is the multi-use of the Accused Products, including aromatherapy, culinary infusion, and smoking hookah, which, combined with its innovative design, justifies appeal to premium buyers, thereby enhancing smoke shop profitability.[30] Hookah is type of water pipe and one of the primary uses of the Accused Products. A 2014 study revealed that 90% of hookah users smoked tobacco, 45% smoked cannabis and 37% smoked herbal (non-tobacco) shisha.[31] In November of 2023, recreational cannabis was legalized in Ohio with sales commencing in August of 2024.[32] As the cannabis market continues to develop and expand, it attracts more customers to smoke shops seeking smoking accessories. Given that the Defendants are in Ohio, it is reasonable to infer that sales of water pipe hookahs are increasing in response to the growing popularity of cannabis products.

33. The estimated product sales within a smoke shop can be seen below in Figure 3.

---

[28] https://www.leafdistro.com/the-top-smoke-shop-products-in-2025-a-guide-for-retailers-and-wholesalers?
[29] https://www.alliedmarketresearch.com/smoking-accessories-market-A16013
[30] https://stundenglass.com/pages/about & https://www.sarasotamagazine.com/advantagepoint/2025/01/can-you-use-a-water-pipe-for-different-substances
[31] https://www.sciencedirect.com/science/article/abs/pii/S0306460314000872?via%3Dihub
[32] https://www.ohiostatecannabis.org/laws

*Figure 3 – Estimated Product Sales Mix*



34. Given that the Accused Products are water pipes, this represents the portion of sales relevant to the economic damages calculation I am conducting. As shown at Figure 3, water pipes contribute 10–15% of total sales. Their increasing popularity in U.S. smoke shops, fueled by their multi-use compatibility with tobacco, herbs, and cannabis, supports this range. A conservative midpoint is 10%, while 15% reflects the growth in urban and suburban areas within states where cannabis is legal. Research indicates the water pipes segment of the smoking accessories market was valued at $19.73 billion and estimated to grow to $28.3 billion by 2030.[33]

35. However, I would like to point out that the estimated product mix found in Figure 3 reflects gross sales, not profitability. Because the Accused Products are high-margin and premium-priced, their contribution to DE is disproportionately higher compared to their sales volume. Based on these findings, I ascribed a 5% apportionment rate of total DE to the Accused Products. This allocation is consistent with the Accused Products market presence and profit contribution relative to lower-margin categories such as standard tobacco products.[34] Furthermore, a 5% DE apportionment

---

[33] https://www.grandviewresearch.com/horizon/statistics/smoking-accessories-market/type/waterpipes/global
[34] https://www.posnation.com/blog/is-a-smoke-shop-a-profitable-business

ACCLIMATION
G R O U P

rate aligns with typical profitability for high-margin specialty items, marked by significant price differentials and targeted consumer demand. The ongoing growth of the cannabis sector further supports the sustained relevance and earning potential of the Accused Products.

36. By applying a 5% DE apportionment rate to the damages period from 2020 to 2029 and utilizing the forecasted DE values from Figure 2, I calculated the total DE attributable to the Accused Products. My calculation results in a total of $48,214.55 and be seen below in Figure 4.

*Figure 4 – DE Attributable to Accused Products[35]*

| Year | Total DE | 5% Apportioned DE |
|------|----------|-------------------|
| 2020 | $78,838.70 | $3,941.94 |
| 2021 | $82,307.61 | $4,115.38 |
| 2022 | $85,929.14 | $4,296.46 |
| 2023 | $89,710.02 | $4,485.50 |
| 2024 | $93,657.26 | $4,682.86 |
| 2025 | $97,778.18 | $4,888.91 |
| 2026 | $102,080.42 | $5,104.02 |
| 2027 | $106,571.96 | $5,328.60 |
| 2028 | $111,261.13 | $5,563.06 |
| 2029 | $116,156.62 | $5,807.83 |
| | **Total** | **$48,214.55** |

37. Another factor to consider when determining the DE attributable to the Accused Products is the possibility of underreported revenue due to the prevalence of cash transactions. Smoke shops often rely on cash transactions because of their classification as high-risk merchants, which causes higher credit card processing fees and limited access to digital payment systems.[36] Consequently, some smoke shops operate as cash-only businesses.[37] Research shows 30% of smoke shop revenue

---

[35] See Schedule 3.
[36] https://verticaliq.com/product/tobacco-and-smoke-shops/#row-unique-3 & https://www.hbms.com/blog/why-vape-and-e-cig-shops-require-special-payment-processing-solutions
[37] https://verticaliq.com/product/tobacco-and-smoke-shops/#row-unique-3

is generated through cash transactions, which are not automatically recorded in digital systems, thus there's a potential for underreporting revenue, even if it's unintentional.[38] As a result, due to the potential for underreported revenue, the calculated DE attributable to the Accused Products reflects a conservative estimate.

38. This apportionment rate assigns only the reasonably certain portion of profits attributable to the infringing conduct included in the damages model. It strikes a balance between the prevalence of the Accused Products in smoke shop offerings and their disproportionately higher contribution to overall profitability.

## V. DETERENCE CHANGE MULTIPLIER

39. After calculating the Defendants' economic benefit attributable to the Accused Products as $48,214.55, the next step in the damages analysis is to determine an appropriate multiplier to ensure effective deterrence. This step is rooted in economic theory and legal precedent, both of which support enhanced monetary relief where the threat of infringement recurrence remains high, and enforcement is otherwise difficult or costly.

40. The use of a 3x deterrence change multiplier is grounded in behavioral economics principles and supported by peer-reviewed psychological research on persuasion. Specifically, Robert Frank Weiss's study on "Repetition of Persuasion" demonstrated that three exposures to persuasive communication led to significantly greater opinion formation and agreement compared to a single exposure.[39] This finding suggests that a penalty three times the economic benefit could enhance

---

[38] https://paymentfunnels.com/payment-processing-options-for-smokeshops/ & https://businessisthebestmedicine.com/cash-based-business/
[39] Weiss, R. F. (1969). Repetition of Persuasion. Psychological Reports, 25 (2), 669–670.

the deterrent effect, making the consequences of selling counterfeit products more impactful and thus more effective in preventing future infringements.

41. The use of a multiplier is further supported by damages experts in the Federal Circuit, where it has been accepted without exclusion in defamation cases when assessing reputational harm.[40] The rationale behind this approach applies proportionately in trademark counterfeiting contexts, where the enforcement gap and economic incentives closely mirror those in defamation, and where statutory and enhanced damages are essential to rebalancing the risk-reward equation for infringing parties.[41]

42. Taking into consideration the estimated DE derived from the sale of Accused Products and applying a deterrence multiplier, the resulting damages estimate is sufficient to eliminate the economic incentive for continued infringement. To achieve effective deterrence and neutralize the financial incentive for continued unauthorized sales, a 3x multiplier is applied to this total. The data indicates that a damages award of $144,643.66 would be necessary to eliminate the financial incentive for the Defendants to continue selling the Accused Products.

## VI. CONCLUSIONS

43. Based on my experience in business valuations, as well as an analysis of the facts and circumstances of this case, I have determined that a monetary award of $144,643.66 would effectively serve to deter the Defendants from selling the Accused Products.

44. I reserve the right to revisit and supplement this analysis, as well as to amend my conclusions should additional information or documents become available. Furthermore, I reserve the right to

---

[40] E. Jean Carroll v. Donald J. Trump, No. 22-10016 (2d Cir. 2022) & John H. Schnatter v. 247 Group, LLC, No. 3:20-cv-00003 (W.D. Ky. 2022)
[41] https://www.vondranlegal.com/how-to-calculate-damages-in-software-infringement-cases

respond to the opinions and issues raised by any opposing experts. Finally, I may utilize demonstrative and other exhibits to present the opinions expressed in this report, as well as in any supplemental, amended, or rebuttal reports.



## EXHIBIT A: DOCUMENTATION RELIED ON

| Title |
| --- |
| Legal Complaint |
| ValuSource Market Comps |
| https://www.bbb.org/us/ca/los-angeles/profile/online-retailer/gs-holistic-llc-1216-1000009512 |
| https://stundenglass.com |
| https://uspto.report/company/Gs-Holistic-L-L-C |
| https://www.ibisworld.com/united-states/industry/tobacconists/5954/ |
| E. Jean Carroll v. Donald J. Trump, No. 22-10016 (2d Cir. 2022) |
| John H. Schnatter v. 247 Group, LLC, No. 3:20-cv-00003 (W.D. Ky. 2022) |
| www.valusource.com/about-us/ |
| https://www.investopedia.com/terms/s/sic_code.asp |
| https://www.naics.com/sic-industry-description/?code=5993&v=2022 |
| https://stundenglass.com/pages/warranty |
| https://www.ibisworld.com/united-states/industry/tobacconists/5954/ |
| https://www.pbs.org/newshour/politics/ohio-votes-to-legalize-marijuana-for-adult-recreational-use-becoming-24th-state-to-do-so |
| https://www.ideastream.org/economy/2025-04-04/smoke-smart-ohio-consumers-and-dispensaries-can-cultivate-a-quality-cannabis-experience |



| |
|---|
| https://www.cannabisbusinesstimes.com/us-states/ohio/news/15687244/ohios-cannabis-market-projected-to-exceed-1-billion-in-sales-by-2027 |
| VirnetX, Inc. v. Cisco Sys., Inc., 767 F.3d 1308 (Fed. Cir. 2014) |
| https://verticaliq.com/product/tobacco-and-smoke-shops/#row-unique-3 |
| https://www.posnation.com/blog/is-a-smoke-shop-a-profitable-business |
| https://www.ftc.gov/system/files/ftc_gov/pdf/2022-Cigarette-Report.pdf |
| https://www.imarcgroup.com/smoking-accessories-market |
| https://phoeniciangrinders.com/blogs/news/smoke-shop-market-analysis-2023-ytd?srsltid=AfmBOorLG8Jt4uunaJyG7vmwcwfQJQSWOnmkymYzKf1Lg8lA5p3IB9Rc |
| https://www.alliedmarketresearch.com/smoking-accessories-market-A16013 |
| https://www.grandviewresearch.com/industry-analysis/us-e-cigarette-vape-market |
| https://www.leafdistro.com/the-top-smoke-shop-products-in-2025-a-guide-for-retailers-and-wholesalers? |
| https://stundenglass.com/pages/about |
| https://www.sarasotamagazine.com/advantagepoint/2025/01/can-you-use-a-water-pipe-for-different-substances |
| https://www.sciencedirect.com/science/article/abs/pii/S0306460314000872?via%3Dihub |
| https://www.ohiostatecannabis.org/laws |



| |
|---|
| https://www.grandviewresearch.com/horizon/statistics/smoking-accessories-market/type/waterpipes/global |
| https://www.hbms.com/blog/why-vape-and-e-cig-shops-require-special-payment-processing-solutions |
| https://paymentfunnels.com/payment-processing-options-for-smokeshops/ |
| https://businessisthebestmedicine.com/cash-based-business/ |
| Weiss, R. F. (1969). Repetition of Persuasion. Psychological Reports, 25 (2), 669–670 |
| https://www.vondranlegal.com/how-to-calculate-damages-in-software-infringement-cases |



**EXHIBIT B: PRAB MULTANI CV**

## Litigation Assignments Assisted

1. <u>Rachael Snow</u> v. Snow, Carpio & Weekley, PLLC, et al.
   Case No: 01-24-0005-7972
   Primary Action: Right of Publicity
   Industry: Law Firm
   Venue: American Arbitration Association

2. <u>Cheryl Hintzen-Gaines</u> v. Barbara Jean Adelson and David Adelson
   Case No. 1 CA-CV 23-0562
   Primary Action: Defamation
   Industry: Philanthropy
   Venue: Court of Appeals of Arizona, Division 1

3. <u>Yacoub Ould Sidya</u> v. Sidi Mohamed Kmache
   Case No. 3:24-cv-238-CHB
   Primary Action: Defamation
   Industry: Social Media
   Venue: United States District Court, Western District of Kentucky, Louisville Division

4. <u>RRR Electripro, LLC</u> vs. Dashiell Corporation
   Cause No. B-209981
   Primary Action: Negligence
   Industry: Oil and Gas
   Venue: District Court of Jefferson County, TX, 60th Judicial District

5. <u>Taqueria La Siberia De Monterrey Inc., Fatima R. Errington, et al</u> vs. Arsenio Rodriguez, A3
   Hospitality Group LLC, et al
   Cause No. 2023-CI-15556
   Industry: Restaurants
   Venue: District Court of Bexar County, TX, 73rd Judicial District

6. <u>FastExpert, Inc.,</u> v. Clever Real Estate, Inc.
   Casuse No. 23SL-CC04034
   Primary Action: Defamation
   Industry: Real Estate
   Venue: Circuit Court of the County of St. Louis, State of Missouri

## Professional Experience

**Business Valuation Manager:** Acclimation Group
*2024*



**Strategic Advisor:** BP of Salem LLC; Marathon of Salem Avenue LLC; 40 Vape & Smoke LLC
*2023*

**Benefit-Cost Analyst:** Tidal Basin Government Consulting Firm
*2022*

**Financial Consultant:** Strategic Consulting
*2020*

## Education

**Binghamton University,** Bachelor of Arts in Economics

Acclimation Group
**Smoke Shop Market Comp Statistics**                                                    **Schedule 1**

| Smoke Shop Market Comp Statistics | | | | | |
|---|---|---|---|---|---|
| *In Dollars* | | | | | |
| **All Market Transactions** | Sales | DE | Price | Price / Sales | Price / DE |
| Low | $225,000.00 | $37,000.00 | $105,000.00 | 0.5x | 2.8x |
| High | $3,264,000.00 | $746,000.00 | $1,100,000.00 | 0.3x | 1.5x |
| Mean | $703,708.33 | $142,791.67 | $357,000.00 | 0.5x | 2.5x |
| Median | $585,000.00 | $110,000.00 | $339,000.00 | 0.6x | 3.1x |
| Count | 24 | 24 | 24 | 24 | 24 |
| *In Dollars* | | | | | |
| **Midwest Market Transactions** | Sales | DE | Price | Price / Sales | Price / DE |
| Low | $265,000.00 | $66,000.00 | $149,000.00 | 0.6x | 2.3x |
| High | $552,000.00 | $81,000.00 | $323,000.00 | 0.6x | 4.0x |
| Mean | $372,333.33 | $72,333.33 | $209,000.00 | 0.6x | 2.9x |
| Median | $300,000.00 | $70,000.00 | $155,000.00 | 0.5x | 2.2x |
| Count | 3 | 3 | 3 | 3 | 3 |

Acclimation Group
**Smoke Shop - Private Market Transactions**
**Schedule 2**

| Damages Model | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Actual Estimates** | | | | | | | | | |
| ID | SIC | Business Description | Sales | DE | Price | Price / Sales | Price / DE | State | Sale Date |
| 44730 | 5993 | Cigar Shop | $330,000 | $234,000 | $150,000 | 0.5x | 0.6x | FL | 5/1/2019 |
| 46233 | 5993 | Cigar Shop | $250,000 | $60,000 | $175,000 | 0.7x | 2.9x | LA | 8/15/2017 |
| 50079 | 5993 | Cigar Shop | $311,000 | $81,000 | $200,000 | 0.6x | 2.5x | AZ | 3/12/2016 |
| 47825 | 5993 | Retail Miscellaneous | $265,000 | $66,000 | $155,000 | 0.6x | 2.3x | IL | 4/5/2016 |
| 49647 | 5993 | Retail Miscellaneous / Retail Speci | $879,000 | $132,000 | $300,000 | 0.3x | 2.3x | CA | 03/13/20 |
| 48341 | 5993 | Retail Tobacco Store | $725,000 | $122,000 | $530,000 | 0.7x | 4.3x | TX | 09/01/15 |
| 44898 | 5993 | Retail Tobacco Store | $1,487,000 | $253,000 | $871,000 | 0.6x | 3.4x | AL | 8/31/2017 |
| 42224 | 5993 | Retail Tobacco Store | $3,264,000 | $746,000 | $1,100,000 | 0.3x | 1.5x | FL | 08/01/17 |
| 52861 | 5993 | Smoke Shop | $661,000 | $123,000 | $170,000 | 0.3x | 1.4x | CA | 07/18/19 |
| 53658 | 5993 | Smoke Shop | $570,000 | $155,000 | $400,000 | 0.7x | 2.6x | CA | 06/29/20 |
| 53693 | 5993 | Smoke Shop | $570,000 | $155,000 | $400,000 | 0.7x | 2.6x | CA | 06/29/20 |
| 56790 | 5993 | Smoke Shop | $693,000 | $113,000 | $410,000 | 0.6x | 3.6x | AZ | 09/11/21 |
| 56064 | 5993 | Tobacco | $422,000 | $71,000 | $250,000 | 0.6x | 3.5x | CA | 06/07/21 |
| 47115 | 5993 | Tobacco | $675,000 | $84,000 | $308,000 | 0.5x | 3.7x | CA | 11/25/18 |
| 51243 | 5993 | Tobacco | $300,000 | $70,000 | $149,000 | 0.5x | 2.1x | OH | 03/03/16 |
| 45571 | 5993 | Tobacco | $552,000 | $81,000 | $323,000 | 0.6x | 4.0x | MO | 08/14/18 |
| 46433 | 5993 | Tobacco Sales | $400,000 | $54,000 | $224,000 | 0.6x | 4.1x | CA | 11/17/17 |
| 53571 | 5993 | Tobacco Sales | $783,000 | $196,000 | $475,000 | 0.6x | 2.4x | WA | 10/02/21 |
| 43520 | 5993 | Tobacco Shop | $225,000 | $37,000 | $105,000 | 0.5x | 2.8x | CA | 07/14/17 |
| 43521 | 5993 | Tobacco Shop | $804,000 | $106,000 | $370,000 | 0.5x | 3.5x | CA | 01/08/18 |
| 48234 | 5993 | Tobacco Store | $600,000 | $80,000 | $425,000 | 0.7x | 5.3x | GA | 04/11/17 |
| 48235 | 5993 | Tobacco Store | $560,000 | $86,000 | $375,000 | 0.7x | 4.4x | GA | 05/11/19 |
| 52821 | 5993 | Tobacco/Smoke Shop | $650,000 | $166,000 | $355,000 | 0.5x | 2.1x | GA | 11/11/18 |
| 51370 | 5993 | Tobacco/Vape | $889,000 | $156,000 | $355,000 | 0.4x | 2.3x | GA | 04/23/19 |
| | | **Average** | $ 702,708.33 | $ 142,791.67 | $ 357,291.67 | | | | |

**Midwest Census Region**

| ID | SIC | Business Description | Sales | DE | Price | Price / Sales | Price / DE | State | Sale Date |
|---|---|---|---|---|---|---|---|---|---|
| 47825 | 5993 | Retail Miscellaneous | $ 265,000.00 | $ 66,000.00 | $ 155,000.00 | 0.6x | 2.3x | IL | 04/05/16 |
| 51243 | 5993 | Tobacco | $ 300,000.00 | $ 70,000.00 | $ 149,000.00 | 0.5x | 2.1x | OH | 03/03/16 |
| 45571 | 5993 | Tobacco | $ 552,000.00 | $ 81,000.00 | $ 323,000.00 | 0.6x | 4.0x | MO | 08/14/18 |
| | | **Average** | $ 372,333.33 | $ 72,333.33 | $ 209,000.00 | | | | |

Acclimation Group
**Damages Model**

Schedule 3

## Damages Model

### Actual Estimates

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenue (Average) | $ 372,333.33 | 388,716.00 | $ 405,819.50 | $ 423,675.56 | 442,317.29 | $ 461,779.25 | $ 482,097.53 | $ 503,309.83 | $ 525,455.46 | $ 548,575.50 | $ 572,712.82 | $ 597,912.18 |
| Discretionary Earnings (average) | $ 72,333.33 | 75,516.00 | $ 78,838.70 | $ 82,307.61 | 85,929.14 | $ 89,710.02 | $ 93,657.26 | $ 97,778.18 | $ 102,080.42 | $ 106,571.96 | $ 111,261.13 | $ 116,156.62 |
| Total DE | $ 1,112,140.40 | | | | | | | | | | | |

| | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|
| Damages | $ 3,941.94 | $ 4,115.38 | $ 4,296.46 | $ 4,485.50 | $ 4,682.86 | $ 4,888.91 | $ 5,104.02 | $ 5,328.60 | $ 5,563.06 | $ 5,807.83 |

| | |
|---|---|
| **Total Damages** | $ 48,214.55 |
| Damages Multiple (3x) | 3 |
| **Total Damages (with multiple)** | $ 144,643.66 |

| | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DE Margin | 0.194270367 | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% | 19.43% |
| Growth Rate (CAGR) | 0.044 | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% | 4.4% |
| Apportionment Rate | 0.5 | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% | 5.0% |

Acclimation Group
**Midwest Smoke Shop Comparable Transactions**                                                    **Schedule 4**

| ValuSource Midwest Comparable Transactions | | | | | | |
|---|---|---|---|---|---|---|
| State | Sale Date | Sales | DE | Price | Price / Sales | Price / DE |
| IL | 4/5/2016 | $ 265,000.00 | $ 66,000.00 | $ 155,000.00 | 0.6x | 2.3x |
| OH | 3/3/2016 | $ 300,000.00 | $ 70,000.00 | $ 149,000.00 | 0.5x | 2.1x |
| MO | 8/14/2018 | $ 552,000.00 | $ 81,000.00 | $ 323,000.00 | 0.6x | 4.0x |
| **Average** | 1/6/2017 | $ 372,333.33 | $ 72,333.33 | $ 209,000.00 | 0.6x | 2.8x |